**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 25, 2009

Charles R. Fulbruge III
Clerk

No. 08-51128

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

ALDO ANTONIO HERNANDEZ-MOYA,

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:08-CR-100-ALL

Before JONES, Chief Judge, and SMITH and DeMOSS, Circuit Judges.

PER CURIAM:[*]

While driving on Interstate 20, Defendant-Appellant Aldo Antonio Hernandez-Moya was stopped by border patrol agents and charged with transporting illegal aliens. He pled guilty while reserving the right to pursue a motion to suppress evidence obtained by the border patrol agents, asserting that the stop was conducted without reasonable and articulable suspicion. In a thorough and well-reasoned ruling that develops the facts more thoroughly than we need do here, the district court denied the motion to suppress. We affirm,

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

finding that the district court did not err and that the use of the *Brignoni-Ponce* standard to assess roving border patrol stops does not violate the Equal Protection Clause.

## I. Background

Hernandez-Moya was charged in a two-count indictment of transporting illegal aliens and using and possessing counterfeit alien registration documents. These charges arose after two border patrol agents stopped Hernandez-Moya's vehicle and discovered six illegal aliens from Mexico, including Defendant-Appellant himself.

Agent Michael Meyer and his partner were parked in a marked Border Patrol SUV and observing eastbound traffic traveling on Interstate Highway 20, east of Midland, Texas. Interstate 20 is a heavily traveled corridor linking the El Paso area on the U.S.-Mexico border and the Dallas-Fort Worth area. The agents' SUV was parked on the median of the highway and the headlights of the SUV shined onto the passing cars. As a result, the agents had a clear view into the interiors of passing vehicles. Around 6:00 a.m., Agent Meyer observed a dark-colored Chevy Tahoe pass on the interstate. The Tahoe was not violating any traffic laws. Agent Meyer observed six occupants in the Tahoe all of whom appeared to be Hispanic.

The agents followed the Tahoe and ran a computer check, which showed that the car was registered to an address in Garland, Texas, near Dallas. After the agents' vehicle pulled into traffic behind the Tahoe, the Tahoe weaved slightly from side to side, though not outside its marked lane, and slowed considerably below the speed limit. As Agent Meyer pulled in closer, he observed that the Tahoe now appeared to only contain two individuals—the driver and the front passenger. Agent Meyer inferred that the four passengers in the back had ducked down to hide.

Based on these facts, Agent Meyer pulled over the Tahoe and conducted an immigration stop. Upon questioning by Agent Meyer, Hernandez-Moya, the driver of the Tahoe, admitted that he was a Mexican national who was in the United States illegally. Upon further questioning, the remaining passengers also indicated that they were in the United States illegally. Hernandez-Moya was then arrested and taken to the Border Patrol station in Midland.

Hernandez-Moya filed a motion to suppress all of the counterfeit documents and other evidence seized from the Tahoe and all incriminating statements made to law enforcement officials. Hernandez-Moya argued that the agents did not have reasonable and articulable suspicion to conduct the stop. The district court denied the motion. Thereafter, Hernandez-Moya pled guilty to both counts of the indictment, but retained his right to appeal the motion to suppress. Hernandez-Moya now appeals the denial of his motion to suppress.

## II.  Standard of Review

This court reviews the district court's factual findings under the clearly erroneous standard. *United States v. Inocencio,* 40 F.3d 716, 721 (5th Cir. 1994). The evidence presented at a pre-trial hearing on a motion to suppress is viewed in the light most favorable to the prevailing party. *Id.* The conclusions of law derived from a district court's findings of fact, such as whether a reasonable suspicion existed to stop a vehicle, are reviewed *de novo. Id.*

## III.  Discussion

### A.  Vehicle Stop

Appellant argues that the district court erred by applying the standard for border searches under *United States v. Brignoni-Ponce* rather than the search and seizure standard articulated in *Terry v. Ohio. See Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968); *United States v. Brignoni-Ponce*, 422 U.S. 873, 95 S. Ct. 2574 (1975). Appellant asserts that the *Brignoni-Ponce* standard is only

applicable to those cases involving a close proximity to the border. This is incorrect. This court has held that roving border patrol stops, even those not in close proximity to the border, should be analyzed using the *Brignoni-Ponce* factors. *Inocencio*, 40 F.3d at 722. *See also United States v. Orozco,* 191 F.3d 578, 581-582 n.3 (5th Cir. 1999) (applying *Brignoni-Ponce* to a stop that occurred some 200-300 miles away from the border and rejecting the argument that stops beyond a 100-mile zone from the border are precluded from a *Brignoni-Ponce* inquiry). Proximity to the border is only one of a number of *Brignoni-Ponce* factors weighed when determining whether a border patrol agent had the requisite reasonable suspicion to make a stop. *Inocencio,* 40 F.3d at 722.

In the alternative, Appellant contends that even if the court were to apply the *Brignoni-Ponce* standard, the border patrol agent still lacked the requisite reasonable suspicion for a vehicle stop. The *Brignoni-Ponce* inquiry is a "fact-intensive test in which the court looks at all circumstances together to weigh not the individual layers, but the laminated total." *United States v. Jacquinot*, 258 F.3d 423, 427 (5th Cir. 2001). A number of factors may be considered, including: characteristics of the area, such as its proximity to the border, usual traffic patterns, previous experience with alien traffic; information about recent illegal border crossings; the driver's behavior, such as erratic driving or obvious attempts to evade officers; the driver's behavior, the appearance of the vehicle, such as whether the vehicle is heavily loaded; and appearance of the persons in the vehicle such as if officers observe passengers trying to hide. *Brignoni-Ponce*, 422 U.S. at 884-85. No single factor is controlling, and the absence of any particular factor is not determinative. *United States v. Cardona*, 955 F.2d 976, 980 (5th Cir. 1992).

In its ruling, the district court found the evasive behavior of the passengers to be the most significant factor supporting reasonable suspicion. Agent Meyer testified that he initially saw six people in the Tahoe as it drove past the agents' marked Border Patrol vehicle. Meyer testified, however, that

only two of the six occupants could be seen after the Border Patrol vehicle pulled onto the interstate to follow the Tahoe. Agent Meyer and his partner concluded that the Tahoe's passengers were attempting to hide by ducking down. This court has previously found "evasive action of passengers" to be a "significant factor" in justifying a stop. *United States v. Garcia*, 732 F.2d 1221, 1225 (5th Cir. 1984). Agent Meyer also observed that the passengers appeared to be Hispanic. *Brignoni-Ponce* held that while a stop based on the ethnicity of the vehicle occupants alone cannot be justified, appearance and ethnicity can be considered as another factor. 422 U.S. at 886-87.

Viewing the totality of the circumstances, the border patrol agents had articulable facts, together with rational inferences, reasonably warranting suspicion that Appellant's vehicle may have contained illegal aliens. *See Brignoni-Ponce*, 422 U.S. at 884. We agree with the district court's analysis.

## B. Equal Protection Claims

Appellant also argues that it is a violation of the Equal Protection Clause to apply the *Brignoni-Ponce* test based on the Hispanic ethnicity of the vehicle occupants while applying the *Terry* test to white vehicle occupants stopped for non-immigration reasons. Appellant's argument misstates the difference between the two tests. The application of one test over the other does not turn upon race or ethnicity but on the type of law enforcement officers and the nature of the stop. *Terry* analysis applies to investigative stops made by local police officers, while *Brignoni-Ponce* applies to stops by roving border agents. *See Terry*, 392 U.S. at 5; *Brignoni-Ponce*, 422 U.S. at 881-82; *Cardona*, 955 F.2d at 980.

Further, under *Brignoni-Ponce*, ethnicity alone does not determine or support reasonable suspicion for a stop. 422 U.S. at 886-87. However, the Supreme Court has held that ethnic appearance may be considered as one of the relevant factors in supporting a reasonable suspicion that a vehicle is involved in the transportation of illegal aliens. *Id*. We find that applying the *Brignoni-*

*Ponce* factors to a roving border patrol stop does not violate the Equal Protection Clause.

## IV. Conclusion

The district court's order denying the motion to suppress appropriately applied the *Brignoni-Ponce* standard and thoroughly considered all the relevant factors. For essentially the same reasons articulated by the district court, we affirm the judgment of conviction.

**AFFIRMED.**