# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 22, 2011

No. 10-50315
Summary Calendar

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

                              Plaintiff-Appellee,

versus

SHALEEN RIVERA-GONZALEZ,

                              Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas
No. 7:09-CR-304-2

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

_____

No. 10-50375
Summary Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARTIN RIVERA-GONZALEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas
No. 7:09-CR-304-1

_____

Before DAVIS, SMITH, and SOUTHWICK, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Shalleen Rivera-Gonzalez and Martin Rivera-Gonzalez were convicted of conspiracy to possess with intent to distribute 100 kilograms or more of marihuana and of possession with intent to distribute 100 kilograms or more of marihuana. They challenge the denial of their motion to suppress the evidence seized during a roving border patrol stop. Because there was reasonable suspicion jus-

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

2

No. 10-50315
No. 10-50375

tifying the stop, we affirm.

I.

Border Patrol Agents Michael Meyer and David Collier were parked in a marked Border Patrol vehicle observing eastbound traffic on Interstate 20 ("I-20") at mile marker 106 near Midland, Texas. Both agents had extensive experience. Collier had spent twelve years as a Border Patrol Agent, with five years patrolling the highway around Midland. Meyer had seven years of experience and had spent two years patrolling around Midland. Although the agents were about 200 miles from the Texas-Mexico border, they testified, based on their experience performing numerous other traffic stops in the area, that I-20 is a common route for smuggling drugs and illegal aliens into the United States.

The agents observed a 1990's-model Chevrolet pickup heading east. The agents decided to follow to obtain more information. After drawing near, they ran stolen-vehicle and border-crossing checks, both of which were negative. They next observed that the rear wheel wells were muddy, suggesting that the truck may recently have been off-road. Otherwise, the pickup was uncommonly clean for an old vehicle that far outside the city. In particular, the tires had recently been polished with a tire cleaner such as "Armor All." Meyer testified that those facts were suspicious, because he had recently attended a training session at which he was told that smugglers often clean their vehicles and use Armor All on the tires.

The agents also found it suspicious that the rear windows were darkly tinted, preventing them from seeing into the pickup, and that the vehicle contained one male driver accompanied by a female passenger. The agents had recently arrested a female "decoy" who told them that she had been paid to accompany a smuggler to make him blend in with normal traffic, so they thought the

3

No. 10-50315
No. 10-50375

passenger here could be playing the same role.

The agents had pulled into the left lane alongside the pickup to make these observations, but the driver would not make eye contact with them. After several miles, the pickup approached slower traffic, and the agents slowed to give the pickup room to pass. After passing and returning to the right lane, the driver left his right turn signal on for over a minute. A few minutes later, the pickup approached a semi tractor-trailer, and the agents again slowed to give room to pass. The driver refused to pass the semi, however, thereby avoiding traveling in front of the agents' vehicle. Consequently, the agents entered the right lane behind the pickup.

The pickup immediately moved into the left lane to pass the semi, then the driver initiated the right turn signal before he was even halfway past the truck. After passing, the pickup returned to the right lane and immediately slowed down below its previous cruising speed, thus leaving no room for the agents to pull behind it. The agents found that driving behavior suspicious, indicating both nervousness and an attempt to evade police surveillance. Consequently, as soon as the semi slowed to give them an opportunity to pull behind the pickup, the agents initiated a traffic stop.

Meyer approached and questioned the driver and the passenger. He iden-tified the driver as defendant Martin Rivera-Gonzalez, who admitted to being an illegal alien, and the passenger as defendant Shalleen Rivera-Gonzalez, who indicated she was a U.S. citizen. During the questioning, Meyer detected a strong odor of marihuana from inside the vehicle. Shalleen Rivera-Gonzalez provided consent to search the vehicle, and the agents uncovered 334.5 pounds of marihuana in duffle bags in the rear seat and in the toolbox in the bed.

No. 10-50315
No. 10-50375

## II.

When reviewing the denial of a motion to suppress, we review factual findings for clear error and view the evidence "in the light most favorable to the government, as the prevailing party," but "the district court's legal conclusions, including whether there was reasonable suspicion for the stop, are reviewed de novo." *United States v. Gonzalez*, 190 F.3d 668, 671 (5th Cir. 1999). "Border Patrol agents on roving patrol may stop a vehicle when they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the particular vehicle is involved in illegal activity." *United States v. Ceniceros*, 204 F.3d 581, 584 (5th Cir. 2000) (citing *United States v. Brignoni-Ponce*, 422 U.S. 873, 884 (1975)).  Relevant factors for evaluating the existence of reasonable suspicion include "(1) the characteristics of the area in which the vehicle is encountered; (2) the arresting agent's previous experience with criminal activity; (3) the area's proximity to the border; (4) the usual traffic patterns on the road; (5) information about recent illegal trafficking in aliens or narcotics in the area; (6) the appearance of the vehicle; (7) the driver's behavior; and, (8) the passengers' number, appearance and behavior." *Id.* (citing *Brignoni-Ponce*, 422 U.S. at 884-85).

"No single factor is determinative," but rather "the totality of the particular circumstances must govern the reasonableness of any stop by roving border patrol officers." *United States v. Moreno-Chaparro*, 180 F.3d 629, 631 (5th Cir. 1998).  Reasonable suspicion requires more than an "inchoate and unparticularized suspicion or 'hunch,'" but the level of suspicion required is "less demanding than that for probable cause" and "considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (citations omitted).

We first consider the stop's proximity to the border, a "'paramount factor'

5

in determining reasonable suspicion," because it suggests whether the vehicle is coming from the border and is thus more likely to carry contraband. *United States v. Orozco*, 191 F.3d 578, 581 (5th Cir. 1999). "[A] car traveling more than fifty miles from the border is usually viewed as being too far from the border to support an inference that it originated its journey there." *United States v. Jones*, 149 F.3d 364, 368 (5th Cir. 1998).

These defendants were stopped about 200 miles from the border, so we must discount this factor and "look at the remaining factors 'most carefully' to ensure the stop complied with the requirements of the Fourth Amendment."[1] Nonetheless, even beyond the fifty-mile benchmark, the fact that a vehicle is traveling away from the border can carry some minimum weight as "a legitimate factor when viewed in conjunction with the other factors considered by the agent."[2] The proximity factor thus provides minimal support for the finding of reasonable suspicion.

The reputation of the particular area here more strongly supports the finding of reasonable suspicion, for "[i]t is well established that a road's reputation as a smuggling route adds to the reasonableness of the agents' suspicion."[3] Meyer and Collier testified about the prevalence of drug and illegal alien smuggling on I-20 near Midland. At least two previous decisions of this court addressing stops along the same stretch of I-20 have accorded significant weight to the

---

[1] *Orozco*, 191 F.3d at 581 (citing *United States v. Rodriguez-Rivas*, 151 F.3d 377, 380 (5th Cir. 1998)). *Accord United States v. Olivares-Pacheco*, No. 10-50063, 2011 U.S. App. LEXIS 2505, at \*5-\*6 (5th Cir. Feb. 10, 2011) (vacating conviction after stop on I-20 near Midland/-Odessa, concluding that distance factor cut against government because no reason to believe vehicle came from border).

[2] *Ceniceros*, 204 F.3d at 584; *see also United States v. Hernandez-Moya*, 353 Fed. App'x 930, 933 (5th Cir. 2009) (per curiam) (upholding a stop near Midland on I-20).

[3] *United States v. Nichols*, 142 F.3d 857, 870 (5th Cir. 1998). *Accord Olivares-Pacheco*, 2011 U.S. App. LEXIS 2505, at \*11-\*12.

No. 10-50315
No. 10-50375

reputation of the area.[4]

The pickup's appearance supports reasonable suspicion.  The extreme cleanliness of a vehicle is significant in a rural area where such clean vehicles are unusual.  *See Nichols*, 142 F.3d at 871.  The polished tires add to the unusualness.  Those factors are strengthened in light of Meyer's training, which informed him that smugglers often clean their vehicles and use Armor All on the tires.  Another significant factor is the darkly tinted windows, which, although they "alone do not rise to the level of reasonable suspicion,"[5] are notable because they prevented the officers from allaying their other suspicions.[6]

Perhaps the most significant factor is the defendants' erratic driving and attempt to evade the agents.  "The driver's behavior may be relevant, as erratic driving or obvious attempts to evade officers can support a reasonable suspicion."[7]  Nonetheless, we have cautioned that "when the officer's actions are such

---

[4] *See United States v. Morales*, 191 F.3d 602, 604 (5th Cir. 1999) (explaining that I-20 is "notorious for alien smuggling and narcotics" because it "has its western terminus at I-10, approximately 120 miles east of El Paso, Texas, and runs easterly cross-country through numerous heavily populated areas, including at least six with connecting north/south interstate highways: Dallas, Texas; Shreveport, Louisiana; Jackson, Mississippi; Birmingham, Alabama; Atlanta, Georgia; and Columbia, South Carolina (eastern terminus).  I-10, the I-20 western terminus, passes through El Paso, a heavily trafficked border crossing point.  Moreover, southeast from El Paso for approximately 60 miles, I-10 runs very close to the border.  And, the I-10 terminus for I-20, approximately 30 miles southwest of Pecos, Texas, is approximately 100 miles north of the border.  That area of Texas south of the I-10/I-20 intersection, which includes Big Bend National Park on the border, is frequently (and then some) used for illegal trafficking of aliens and drugs."); *Orozco*, 191 F.3d at 582 ("Although the stop was not within fifty miles of the border, other facts existed indicating that the particular stretch of I-20 was a favored route for illegal alien smugglers.").

[5] *United States v. Guerrero-Barajas*, 240 F.3d 428, 433 (5th Cir. 2001).

[6] *Id.* (mentioning tinted windows as part of the "totality of the circumstances" justifying a stop); *United States v. Villalobos*, 161 F.3d 285, 290 (5th Cir. 1998) ("[T]he extreme darkness of Villalobos's tint did not allay the other suspicious circumstances.").

[7] *Brignoni-Ponce*, 422 U.S. at 885; *see also Villalobos*, 161 F.3d at 291 ("We have held that noticeable deceleration in the presence of a patrol car can contribute to reasonable suspi-
(continued...)

No. 10-50315
No. 10-50375

that any driver, whether innocent or guilty, would be preoccupied with his presence, then any inference that might be drawn from the driver's behavior is destroyed."[8] Here, the defendants' abnormal turn-signaling might qualify as innocent. Even an innocent driver wondering why a Border Patrol car is following for several miles might forget to turn off a turn signal.

Nonetheless, the defendants' behavior here goes far beyond that of an innocent driver. The driver deliberately attempted to prevent the police car from following, first by refusing to pass the semi and then by slowing considerably after passing the semi and leaving too small a space for the agents to change lanes. That behavior, combined with the other circumstances, provides a strong indication of reasonable suspicion of criminal behavior.

All these factors must be viewed in light of the agents' significant experience policing smugglers near the border.[9] "A 'trained officer draws inferences and makes deductions . . . that might well elude an untrained person,' and evidence collected 'must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.'" *United States v. Sanchez-Pena*, 336 F.3d 431, 437 (5th Cir. 2003) (alteration in original) (footnote omitted). Thus, "[w]e traditionally give due deference to the

---

[7] (...continued)
cion, even though drivers often slow when they see law enforcement personnel."); *United States v. Cardona*, 955 F.2d 976, 981 (5th Cir. 1992) (finding persuasive "the fact that the vehicle slowed its speed considerably and began weaving shortly after the agents began following it," indicating that "the driver was watching the agents in his rearview mirror").

[8] *Jones*, 149 F.3d at 370-71; *see also United States v. Chavez-Villarreal*, 3 F.3d 124, 127 (5th Cir. 1993) ("We find nothing suspicious about a driver changing lanes and slowing down when he realizes a vehicle is approaching from the rear; that is a normal reaction if the driver wishes to let the tailing vehicle pass.").

[9] "These agents had considerable experience: twelve and seven years, respectively, with four and one-and-a-half years at the Midland border patrol station, respectively." *Olivares-Pacheco*, 2011 U.S. App. LEXIS 2505, at *12.

experience of officers . . . in identifying a number of factors that, although insuf-
ficient by themselves to suggest illegal activity, taken together are indicia of
certain types of illicit acts." *Id*. (footnote omitted).  Together, Meyer and Collier
had nineteen years of experience, had been trained to recognize suspicious vehi-
cles, and had engaged in numerous traffic stops leading to the discovery of con-
traband material.  We will thus not lightly discount their conclusions.

In sum, the significant factors supporting reasonable suspicion are (1) the
reputation of I-20 as a common smuggling route, (2) the unusual cleanliness of
the pickup, along with the use of a tire cleaner such as Armor All on the pickup's
tires, (3) the presence of dark, tinted windows (4) the erratic driving and attempt
to evade the agents, and (5) the agents' significant experience patrolling the bor-
der.[10]  Those factors combine to establish reasonable suspicion.  Although some
of them are consistent with innocent behavior, they may still contribute to the
finding of reasonable suspicion.[11]  That is particularly true here, where the de-
fendants' attempt to evade the agents' vehicle was abnormal and inconsistent
with typical innocent behavior.  Combined with a series of circumstances that,

---

[10]  We do not find significant that the driver was accompanied by a female, for that con-
dition is more likely to be found in the law-abiding public and is thus not probative of smug-
gling.  *See Jones*, 149 F.3d at 369 ("In other words, what was suspicious about Jones is that
he looked like an unsuspicious tourist.  A factual condition which is consistent with the smug-
gling of illegal aliens in a particular area, will not predicate reasonable suspicion, if that factu-
al condition occurs even more frequently among the law abiding public in the area.").  Nor do
we consider the driver's failure to make eye contact with the agents significant.  *See United
States v. Chavez-Chavez*, 205 F.3d 145, 149 (5th Cir. 2000) ("Whether a driver looks at an offi-
cer or not should not be accorded much weight."); *Moreno-Chaparro*, 180 F.3d at 632 ("We are
persuaded that in the ordinary case, whether a driver looks at an officer or fails to look at an
officer, taken alone or in combination with other factors, should be accorded little weight.").

[11]  *United States v. Arvizu*, 534 U.S. 266, 277-78 (2002) ("A determination that reasona-
ble suspicion exists, however, need not rule out the possibility of innocent conduct.  Undoubt-
edly, each of these factors alone is susceptible of innocent explanation, and some factors are
more probative than others.  Taken together, we believe they suffced to form a particularized
and objective basis for [finding reasonable suspicion].").

No. 10-50315
No. 10-50375

although potentially indicative of innocent behavior, are also common among smugglers, the evasive maneuvers provide particularly strong support for the finding of reasonable suspicion.

Similar decisions of this court are instructive. We recently described the typical circumstances of cases that fail to give rise to reasonable suspicion:

> What is more indicative of a stop lacking in reasonable suspicion is not what is found in the record, but rather in this case, it is what is missing from the record. In the current case, there is no evidence that the officer observed the defendant driving erratically in response to observing his presence; the vehicle itself did not display any of the usual characteristics of a vehicle transporting illegal aliens; the time of the stop was not suspicious; and there is no evidence to indicate that the officer received a tip from an anonymous informant. The overwhelming absence of any of these additional factors —factors that this Court has consistently held are rationally related to a finding of reasonable suspicion—undermines the district court's conclusion that the officer had reasonable suspicion to stop Rangel-Portillo's vehicle.

*United States v. Rangel-Portillo*, 586 F.3d 376, 382-83 (5th Cir. 2009). We have thus acknowledged the recurrence of certain factors that, over the years, have revealed themselves as particularly reliable indicators of reasonable suspicion, and we have indicated that we are hesitant to find reasonable suspicion in their absence.

Two out of the four "additional factors" are present here—erratic driving and a vehicle displaying suspicious characteristics. The presence of only those two of the four "additional factors" has been sufficient to find reasonable suspicion,[12] even where the stop was not within fifty miles of the border.[13] Thus, al-

---

[12] *See United States v. Zapata-Ibarra*, 212 F.3d 877 (erratic driving and heavily loaded van); *Nichols*, 142 F.3d 857 (erratic driving and unusually clean vehicle).

[13] *See Morales*, 191 F.3d 602 (erratic driving and heavily loaded truck).

No. 10-50315
No. 10-50375

though not dispositive,[14] our precedent supports the agents' determination of reasonable suspicion.

The judgment is AFFIRMED.

---

[14] *Nichols*, 142 F.3d 857, 871-72 ("In the totality of the circumstances analysis, each case necessarily must turn on its own facts . . . .").