# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-51307

United States Court of Appeals
Fifth Circuit

**FILED**

October 17, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

RODOLFO GUTIERREZ-PARRA,

Defendant–Appellant.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:16-CR-271

Before CLEMENT, PRADO, and HAYNES, Circuit Judges.

PER CURIAM:*

Rodolfo Gutierrez-Parra ("Gutierrez") appeals the district court's denial of his motion to suppress evidence obtained as a result of a vehicle stop. Finding no error by the district court, we AFFIRM.

## I. BACKGROUND

In the early morning hours of January 24, 2016, El Paso Police Department ("EPPD") Officers Patrick Boyle and Raul Valdez were patrolling a high-crime area in northeast El Paso, Texas. At approximately 2:00 a.m., the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-51307

officers observed a FedEx semi-trailer truck pull into a vacant car wash and body shop parking lot followed by a white minivan. Officer Boyle—a two-and-a-half-year EPPD veteran and a former FedEx employee—became suspicious of the truck and minivan because all nearby businesses were closed, and he had never seen a FedEx truck in that area at that hour.

The officers turned off their patrol car lights and pulled into the parking lot alongside the minivan. As the minivan's driver exited his vehicle, the officers turned on their spotlight and Officer Boyle observed someone peek out of the minivan's sliding door and then quickly shut it upon seeing the officers. At the same time, the FedEx truck drove out of the parking lot at a normal speed and left the scene. Officer Boyle spoke to the driver of the minivan who identified himself as Saul Davila. After being asked what he was doing, Davila responded that he arranged to pick up a car from the body shop at that time. The officers ran a warrant check on Davila, and, after it came back clear, told Davila to leave and come back in the daytime. Davila returned to his minivan and drove away.

The officers followed the minivan for a short distance and observed it enter another parking lot containing closed businesses. At the same time, the officers saw the FedEx truck pull into a parking lot across the street from the minivan. Officer Boyle observed Davila exit the minivan and walk towards the FedEx truck, but the FedEx truck performed a U-turn and again left the area. The officers followed the FedEx truck, but when they could no longer see the minivan, decided to return to the minivan.

As the officers neared the minivan, Davila approached their patrol car on foot and asked if anything was wrong. The officers responded "[n]o," but told him that his story was suspicious as all the nearby businesses were closed. Davila stated that he was looking for another auto shop and invited the officers to follow him, but they declined. At that point, Officer Boyle shined his

2

spotlight onto the minivan and observed condensation building on the back window. Officer Boyle exited the patrol car, approached the minivan, and saw seven people through the window. Through the slightly opened driver's side door, Officer Boyle asked the passengers for identification and what they were doing. After no one responded, Officer Boyle asked again in Spanish, but still he received no answers. Officer Boyle alerted his partner that he suspected that the passengers were undocumented aliens. At that point, someone opened the minivan's two sliding doors. Officer Boyle drew his weapon in response and ordered the passengers to remain in the vehicle. Despite his order, two male passengers ran away. The officers advised dispatch that two suspected undocumented aliens had fled by foot, requested assistance to search for them, and warned to "be on the lookout" for the FedEx truck. The officers also notified the United States Border Patrol through dispatch. As the officers interviewed the remaining passengers, Officer Boyle overheard one of them say that they had been staying at a nearby house and were being transported to Forth Worth to work in construction.

Upon receiving the report about the FedEx truck, two other EPPD officers located the truck about three-and-a-half miles from where Davila and the minivan passengers were detained and pulled it over (at 2:35 a.m.). The officers drew their weapons, approached the FedEx truck, and asked the driver, Gutierrez, to step out of the vehicle. Gutierrez complied and the officers discovered a passenger in the back of the truck's cabin. Minutes later, Border Patrol agents arrived on the scene. Gutierrez consented to a search of his cell phone, which revealed a missed call from an El Paso phone number later determined to be Davila's. Gutierrez later gave a statement to Border Patrol agents that he had agreed to meet an unknown person in El Paso to help smuggle aliens.

No. 16-51307

On February 24, 2016, a federal grand jury charged Gutierrez with one count of conspiracy to transport aliens,[1] and one count of transporting aliens.[2] Gutierrez moved to suppress the evidence obtained as a result of the officers' stop of the FedEx truck, arguing that the officers violated his Fourth Amendment rights by stopping him without reasonable suspicion and prolonging the stop longer than necessary. After conducting an evidentiary hearing, the district court denied the motion to suppress in a written order reasoning that the officers had reasonable suspicion to conduct an investigative stop pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968), and that the length of the detention was reasonable under the circumstances. Gutierrez proceeded to a bench trial on stipulated facts and the district court found him guilty of both counts of the indictment. The court sentenced Gutierrez to time served and two years of supervised release. Gutierrez timely appealed challenging the district court's denial of his motion to suppress.[3]

## II. STANDARD OF REVIEW

In reviewing the denial of a motion to suppress, this Court "review[s] the district court's factual findings for clear error and the district court's ultimate conclusion as to the constitutionality of the law enforcement action de novo." *United States v. Stevens*, 487 F.3d 232, 238 (5th Cir. 2007) (citing *United States v. Chavez–Villarreal*, 3 F.3d 124, 126 (5th Cir. 1993)). This Court views the evidence in the light most favorable to the prevailing party and may affirm on any basis established by the record. *United States v. Aguirre*, 664 F.3d 606, 610 (5th Cir. 2011). Finally, this Court "should uphold the district court's ruling to deny the suppression motion if there is any reasonable view of the evidence to

---

[1] Specifically, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(v)(I), (a)(1)(A)(ii), and (a)(1)(B)(i).

[2] Specifically, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and (a)(1)(B)(ii).

[3] The written stipulation on which Gutierrez proceeded to trial explicitly reserved his right to appeal his conviction and the denial of his motion to suppress.

support it." *United States v. Michelletti*, 13 F.3d 838, 841 (5th Cir. 1994) (citation and internal quotation marks omitted).

## III. DISCUSSION

In his sole issue on appeal, Gutierrez argues that the district court erred in denying his motion to suppress because the officers did not have reasonable suspicion to stop him. While Gutierrez concedes that prior to stopping him, the officers "had developed a reasonable suspicion that the minivan driver was engaged in alien smuggling," he asserts that this reasonable suspicion did not justify stopping Gutierrez in the FedEx truck because "there were no connecting factors to support a reasonable inference that the FedEx truck was associated with the minivan."

"The stopping of a vehicle and detention of its occupants constitutes a 'seizure' under the Fourth Amendment." *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc); *see Delaware v. Prouse*, 440 U.S. 648, 653 (1979). Searches and seizures of motorists who are suspected of criminal activity are analyzed under the *Terry* framework. *United States v. Shabazz*, 993 F.2d 431, 434 (5th Cir. 1993) (citing *United States v. Sharpe*, 470 U.S. 675 (1985); *United States v. Brignoni–Ponce*, 422 U.S. 873 (1975)).[4]

Under the rule articulated in *Terry*, a law enforcement officer "may, consistent with the Fourth Amendment, conduct a brief investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity

---

[4] The Government contends that *Brignoni–Ponce*, which provides reasonable-suspicion factors specific to the roving border patrol context, should apply to the reasonable-suspicion determination here. *See Brignoni–Ponce*, 422 U.S. at 884–87. However, we have held that the general "*Terry* analysis applies to investigative stops made by local police officers, while *Brignoni–Ponce* applies to stops by roving border patrol agents." *United States v. Hernandez–Moya*, 353 F. App'x 930, 934 (5th Cir. 2009) (unpublished); *see also United States v. Brown*, 209 F. App'x 450, 454 (5th Cir. 2006) (unpublished) ("The test set forth in *Brignoni–Ponce* does not apply in non-border patrol cases."). Because Gutierrez was stopped by local El Paso police officers on routine patrol, we apply the *Terry* framework.

is afoot." *United States v. Jordan*, 232 F.3d 447, 448 (5th Cir. 2000) (citing *Terry*, 392 U.S. at 30). To determine whether a *Terry* stop is supported by reasonable suspicion, "we ask whether the officer's action was: (1) 'justified at its inception'; and (2) 'reasonably related in scope to the circumstances which justified the interference in the first place.'" *United States v. Lopez–Moreno*, 420 F.3d 420, 430 (5th Cir. 2005) (quoting *Terry*, 392 U.S. at 19–20). Gutierrez only challenges the first prong of the *Terry* framework by asserting that the officers' stop was not justified at its inception because they lacked reasonable suspicion that he was involved in alien smuggling.

For a *Terry* stop to be justified at its inception, "an officer must have an objectively reasonable suspicion that some sort of illegal activity . . . occurred, or is about to occur." *Lopez–Moreno*, 420 F.3d at 430 (citation omitted); *see also United States v. Jaquez*, 421 F.3d 338, 340 (5th Cir. 2005). The Supreme Court has instructed reviewing courts to "look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citing *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)). While "an officer's reliance on a mere 'hunch' is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Id.* at 274 (citing *Terry*, 392 U.S. at 27; *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). "Any analysis of reasonable suspicion is necessarily fact-specific, and factors which by themselves may appear innocent, may in the aggregate rise to the level of reasonable suspicion." *United States v. Ibarra–Sanchez*, 199 F.3d 753, 759 (5th Cir. 1999) (footnote and citations omitted).

Viewing the totality of the facts in the light most favorable to the Government as the prevailing party below, we find that the officers had a

reasonable, articulable suspicion that Gutierrez was engaged in criminal activity. First, Officer Boyle testified that the officers encountered the FedEx truck and minivan in a high-crime area at 2:00 a.m. in a vacant commercial parking lot. While this alone does not give rise to a reasonable suspicion, a person's presence in a high-crime area late at night is a relevant factor in a reasonable-suspicion determination. *Hill*, 752 F.3d at 1035–36; *see also Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).

Second, Officer Boyle testified that the truck seemed "out of place" because in his two years patrolling the area, he had never seen a FedEx truck in that area at that time, it appeared that the truck and minivan were following each other, and all nearby businesses were closed. Officer Boyle's insight, based on his experience patrolling the area, that the situation appeared unusual is another relevant factor supporting reasonable suspicion. *See Arvizu*, 534 U.S. at 273 (noting that officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person'" (quoting *Cortez*, 449 U.S. at 418)); *Terry*, 392 U.S. at 27 ("[D]ue weight must be given . . . to the specific reasonable inferences which [the officer] is entitled to draw from the facts in light of his experience.").

Third, and perhaps most importantly, the officers had an objectively reasonable belief that the FedEx truck was associated with the minivan. Officer Boyle testified that he observed the minivan pulling into a vacant parking lot behind the FedEx truck as if "the drivers were following each other." While mere simultaneous travel is insufficient to support reasonable suspicion, the officers encountered several other "connecting factors" between the minivan and FedEx truck. *See United States v. Rangel–Portillo*, 586 F.3d 376, 382 (5th Cir. 2009) ("Reasonable suspicion cannot result from the simple fact that two cars are traveling on a roadway or exiting a parking lot, one in

front of the other, unless there are other 'connecting factors' to establish that their simultaneous travel could rationally be considered suspicious." (quoting *United States v. Melendez–Gonzales*, 727 F.2d 407, 412 (5th Cir. 1984))). After the FedEx truck left the first vacant parking lot, the officers encountered the FedEx truck again—this time across the street from the minivan in a second parking lot. At this second location, the officers observed Davila walk towards the FedEx truck, before the truck again left the area. The officers then found several suspected undocumented aliens in Davila's minivan, two of whom fled—presenting evidence that Davila was smuggling aliens. *See Wardlow*, 528 U.S. at 124 ("Headlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such."). As the district court aptly noted, at this point, the FedEx truck's association with the minivan "acquired new meaning": the officers had now observed the FedEx truck in two separate locations late at night in parking lots containing closed businesses driving with or near the minivan they strongly suspected of being used to smuggle aliens. Drawing reasonable inferences from the facts before them, the officers reported the FedEx truck to dispatch and minutes later the truck was pulled over.

Given the totality of these factors and viewing the evidence in the light most favorable to the Government, the district court properly denied Gutierrez's motion to suppress because the officers had a reasonable, articulable suspicion that criminal activity was afoot when they stopped Gutierrez in the FedEx truck. While no one single fact or circumstance here standing alone provides reasonable suspicion, the Supreme Court noted that "[i]n *Terry* . . . reasonable suspicion was supported by a concatenation of acts, each innocent when viewed in isolation, that when considered collectively amounted to extremely suspicious behavior." *Wardlow*, 528 U.S. at 130 n.4 (citing *Terry*, 392 U.S. at 5–7, 22–23). Here, the combination of factors—the

location, time, "out of place" vehicles, and connections between the FedEx truck and the minivan suspected of transporting undocumented aliens—amount to articulable, reasonable suspicion that Gutierrez was or was about to be engaged in criminal activity.

## IV. CONCLUSION

For the forgoing reasons, we AFFIRM the district court's denial of Gutierrez's motion to suppress.