# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 21, 2022

Lyle W. Cayce
Clerk

No. 22-20109

William Vardeman,

*Plaintiff—Appellant*,

*versus*

City of Houston; Rickey Dewayne Simpson,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:20-CV-3242

Before Higginbotham, Southwick, and Higginson, *Circuit Judges*.

Leslie H. Southwick, *Circuit Judge*:

The plaintiff claims a law enforcement officer violated his Fourth Amendment rights by punching him in the face, knocking him to the pavement, then standing over him for a time. The reason for the blow? The plaintiff had not move his vehicle quickly enough at an airport passenger pickup area. The district court dismissed on the pleadings. We conclude, though, the allegations in the complaint present a plausible claim that, viewed

No. 22-20109

objectively, the excessive force used by the law enforcement officer was not just to insist the vehicle be moved, but it constituted a seizure that would prolong the encounter. On the other hand, the plaintiff does not sufficiently allege a municipal policy to support a claim against the city defendant. Accordingly, we REVERSE judgment for the officer, AFFIRM judgment for the city, and REMAND for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

According to the complaint, in September 2018, William Vardeman landed at Hobby Airport in Houston, Texas, for a business trip. His family took a later flight, and he returned to the airport to pick them up. While he awaited his family's arrival, Vardeman made several loops around the passenger pickup area and eventually parked his vehicle. As Vardeman attempted to talk over the phone with his wife and daughter, a traffic officer approached and ordered him to move his vehicle forward. Once Vardeman began moving his vehicle approximately 30 yards forward, his wife called him and told him the family was standing outside the baggage claim doors. Vardeman got out of the vehicle and opened the tailgate to be ready to load his family's luggage. Meanwhile, another traffic officer approached and told him to move his vehicle. He told the traffic officer that his wife and daughter were on their way out. She again told him to move his vehicle, but as he was beginning to pull away, he noticed his family walking up to the vehicle. He got out of the vehicle to reopen the tailgate. As he was beginning to load his family's luggage, the traffic officer approached him again and said, "I told you to move your f---ing car." Vardeman explained to the officer that his family was standing quite near, and he would move as soon as their bags were loaded. The traffic officer responded, "I don't give a f--- and you are going to move that car." The officer then called for assistance.

As Vardeman finished loading his family's bags and prepared to leave, another traffic officer, defendant Rickey DeWayne Simpson, approached and yelled into Vardeman's face, "[y]ou need to move the f---ing car or I will whip your bitch ass." Vardeman's adult daughter, who was holding her baby, attempted to separate the two men by sticking her arm between them, but Simpson "forcefully pushed" her. Vardeman then pushed Simpson away from his daughter and grandchild. Simpson then "aggressively and violently struck" Vardeman in the face with a closed fist, knocked him to the ground, and "menacing[ly]" stood over him, as if he were about to strike again. When Vardeman was able to get off the ground, he called the Houston Police Department to report he "had just been verbally and physically assaulted by an airport officer," and then he returned to his vehicle.

Vardeman asserted claims against the City of Houston for Fourth and Fourteenth Amendment violations, mental anguish, negligence, and deliberately indifferent or negligent hiring and management. He asserted state law claims against Simpson for assault and battery and for mental anguish, and he asserted federal claims under 42 U.S.C. § 1983 against both defendants. The state law claims against Simpson were dismissed, and there is no issue raised here about those.

The district court granted the City of Houston's motion to dismiss under Rule 12(b)(1) and Rule 12(b)(6), finding the City immune from suit. Further, the district court determined Vardeman's Section 1983 claims against the City of Houston failed because he did not show any municipal policy that the officer was carrying out when striking Vardeman.

The Section 1983 claim against Simpson was resolved when the district court granted judgment on the pleadings. The court concluded that, even though the complaint clearly alleged Simpson applied force during the encounter, the only possible inference from this encounter was that Simpson

No. 22-20109

was insisting Vardeman leave, not that he was seizing him. Vardeman timely appealed.

DISCUSSION

Vardeman seeks reversal here of the district court's dismissal of his excessive force claim against Simpson and his municipal liability claim against the City of Houston. Both were dismissed at the pleadings stage.[1]

Both a Rule 12(c) motion for judgment on the pleadings and a Rule 12(b)(6) motion to dismiss for failure to state a claim are reviewed *de novo*. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312, 313 n.8 (5th Cir. 2002). The Rule 12(c) standard is the same as that applied to Rule 12(b)(6). *Gentilello v. Rege*, 627 F.3d 540, 543–44 (5th Cir. 2010). A court may dismiss a complaint as a matter of law when the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

To withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). The court accepts well-pled facts as true and "view[s] them in the light most favorable to the

---

[1] Both Simpson's and the City of Houston's pleadings assert that Vardeman's excessive force claim against Simpson should fail because he is not a law enforcement officer. They rely on a Ninth Circuit case, *United States v. Attson*, 900 F.2d 1427 (9th Cir. 1990), in support of this argument. The district court, though, stated in its opinion that the logic of *Attson* has been implicitly overruled by *Soldal v. Cook Cnty.*, 506 U.S. 56, 68–69 (1992). We considered a similar argument about an officer who handled a city's ambulance permits but acted outside the scope of his duties when detaining two ambulance drivers who did not have permits. *Sweetin v. City of Texas City*, 48 F.4th 387, 390 (5th Cir. 2022). We held the permit officer was subject to Section 1983 but had no qualified immunity because he was acting beyond his authority. *Id.* at 392. Here, Officer Simpson was performing his assigned functions, and he was a government official when performing those duties. The argument that Simpson is not an official subject to Section 1983 is incorrect.

plaintiff." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (quotation marks and citation omitted). Dismissal is appropriate if the facts pled are not enough to state a facially plausible claim for relief. *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013). Plausibility is not akin to probability, but instead, "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Walker*, 938 F.3d at 735 (quotation marks and citation omitted). "All questions of fact and any ambiguities in the current controlling substantive law must be resolved in the plaintiff's favor." *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001). We apply these standards to the two issues raised here. We discuss the officer's liability claim first.

## I. Excessive force claim against Officer Simpson

Relevant here, a seizure occurs within the meaning of the Fourth Amendment when an officer applies "physical force to restrain movement, even when it is ultimately unsuccessful." *California v. Hodari D.*, 499 U.S. 621, 626 (1991). "[T]he appropriate inquiry is whether the challenged conduct objectively manifests an intent to restrain," and "the amount of force remains pertinent in assessing the objective intent." *Torres v. Madrid*, 141 S. Ct. 989, 998 (2021) (emphasis omitted).

The district court rejected that a Fourth Amendment seizure had been pled, finding the alleged facts "do not support a reasonable inference that Simpson objectively manifested an intent to restrain Vardeman." Instead, the court concluded the complaint supports only that the officer "wanted Vardeman to move along, not to remain, and that Simpson left before Vardeman stood back up." Guiding the district court's analysis was the Supreme Court's 2021 decision in *Torres v. Madrid*, which became the central authority in this case when it was released during the pendency of this

litigation.  Before deciding if we agree with the district court's analysis of *Torres*, though, we discuss some older precedents.

We start with considering how to label the encounter between officer and citizen at the airport.  The Supreme Court stated that "not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."  *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). Consequently, an arrest need not be the officer's purpose in order for his or her actions to be a seizure.

After *Terry*, the Supreme Court, in a plurality opinion, applied this analysis to determine whether "a person ha[d] been 'seized' within the meaning of the Fourth Amendment." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).  The Court determined a person has been seized if, given the totality of the circumstances, "a reasonable person would have believed that he was not free to leave."  *Id.*  Examples of such a seizure include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id.*

Though the *Mendenhall* explanation gathered only a plurality, it was "adopted by the Court in later cases." *Hodari D.*, 499 U.S. at 627 (citing, *e.g.*, *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988)).  Therefore, when deciding whether a seizure has occurred, "a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter. *Florida v. Bostick*, 501 U.S. 429, 439 (1991).

No. 22-20109

As its wording shows, the test is objective for whether a seizure occurs when law enforcement officers interact with individuals. "The test's objective standard — looking to the reasonable man's interpretation of the conduct in question — allows the police to determine in advance whether the conduct contemplated will implicate the Fourth Amendment." *Chesternut*, 486 U.S. at 574.

Applying those principles, we see the complaint asserts that officer Simpson arrived after Vardeman finished loading the luggage and closed the tailgate. The complaint identifies Simpson's first words as threatening — "You need to move the f---ing car or I will whip your bitch ass" — and alleges they were expressed when Simpson was "within an inch of Vardeman's face." Vardeman's daughter reached between the two men with her arm to create some separation between them. Simpson pushed the daughter, who was holding her baby, and Vardeman pushed Simpson. Then came Simpson's blow to Vardeman's face:

> Simpson aggressively and violently struck Mr. Vardeman with a closed fist, in the right side of his face with such force it knocked him to the ground. Simpson then proceeded to walk around and stand over Vardeman, in a menacing manner and acting as if [he] was going to strike Vardeman again while he was still on the ground. It was only when Vardeman's wife got in front of Simpson did he walk back to the sidewalk away from Vardeman.

In summary, Vardeman alleged that the officer — after being shoved — physically struck the target of his ire, then hovered over him menacingly.

The Supreme Court has emphasized that the application of force can be quite brief and still be a seizure:

> While a mere touch can be enough for a seizure, the amount of force remains pertinent in assessing the objective intent to

7

restrain . . . . Nor does the seizure depend on the subjective perceptions of the seized person . . . . The rule we announce today is narrow. In addition to the requirement of intent to restrain, a seizure by force — absent submission — lasts only as long as the application of force . . . . But brief seizures are seizures all the same.

*Torres*, 141 S. Ct. at 998–99.

The Court reiterated its rule that a law enforcement "seizure is a single act, and not a continuous fact." *Id.* at 1002 (quoting *Hodari D.*, 499 U.S. at 625). There can be a mere moment of seizure of a person — which is often described in Supreme Court precedent as a "meaningful interference, however brief, with an individual's freedom of movement." *United States v. Jacobsen*, 466 U.S. 109, 113 n.5 (1984) (collecting cases). Vardeman alleges such a meaningful interference here.

We conclude as follows. The allegations that Simpson punched Vardeman in the face so hard that he fell to the ground, and then Simpson hovered over him for a time in a menacing manner, would, if supported by evidence, allow jurors to find that for some period of time at least, a reasonable person would not believe he was free to leave. The Supreme Court has not required a finding that the officer intended to arrest the person, only that an objective person would perceive that at least briefly, there was no freedom to go. *Torres*, 141 S. Ct. at 998–99.

Though the earlier alleged profane insistence by the officer was for Vardeman to move his vehicle, we see a fact dispute as to whether the encounter had become something of longer duration and for a different purpose, such as at least for being issued a ticket. Respectfully, we conclude the district court erred in holding the complaint did not set out sufficient facts for a claim of excessive force in making a seizure.

No. 22-20109

## II.    *City of Houston's liability for Simpson's actions*

To allege a plausible claim under Section 1983 against a municipality, "a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

There are three ways to establish a municipal policy for Section 1983 liability:

> First, a plaintiff can show written policy statements, ordinances, or regulations. Second, a plaintiff can show a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy. Third, even a single decision may constitute municipal policy in rare circumstances when the official or entity possessing final policymaking authority for an action performs the specific act that forms the basis of the Section 1983 claim.

*Webb v. Town of Saint Joseph*, 925 F.3d 209, 214–215 (5th Cir. 2019) (quotation marks and citations omitted). Of relevance here, to establish a pattern, "[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005).

In his complaint, Vardeman provides a list of alleged bad acts by City of Houston employees, jailers, and police officers. None of these incidents, however, are meaningfully related to Simpson's actions at the airport. The district court rejected the relevance of these alleged incidents, saying they were a "hodge-podge of unrelated incidents of Houston police and correctional officer violence"; further, they do not show a "custom, policy, practice, and procedure of using excessive force." Moreover, the district court concluded Vardeman did not adequately establish "a pattern or practice of

9

assaulting [] people at the airport, that the incident was the product of a failure to train the employees, or that the City was deliberately indifferent to the risk of the assault."

The complaint does not adequately allege a pattern or practice, and we generally reject Section 1983 claims against a municipality based on one incident. *See Sanchez v. Young Cnty.*, 866 F.3d 274, 280 (5th Cir. 2017). In one opinion, we remarked on the fact that "the principal evidence of the alleged policy or custom arises from . . . this single case. To be unconstitutional, however, a municipal entity's policy that derives from custom or practice must be so common and well settled as to constitute a custom that fairly represents municipal policy." *Id.* (quotation marks and citation omitted).

We agree with the district court. The complaint does not contain sufficient allegations to make plausible a claim for a pattern or practice of assault. There was no error in dismissing the claim against the City of Houston.

We REVERSE the dismissal of the claims against officer Simpson, AFFIRM judgment for the City of Houston, and REMAND for further proceedings.