# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
November 27, 2023

Lyle W. Cayce
Clerk

————————

No. 23-30238

————————

Gregory James Bledsoe, *on behalf of himself*,

*Plaintiff—Appellee*,

*versus*

Dean Willis, *in his individual capacity as Sergeant of the Shreveport Police Department*; David McClure, *in his individual capacity as Officer of the Shreveport Police Department*,

*Defendants—Appellants*.

———————————————————————

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:21-CV-4367

———————————————————————

Before Wiener, Willett, and Douglas, *Circuit Judges*.

Per Curiam:[*]

Pursuant to 42 U.S.C. § 1983, Gregory James Bledsoe brought malicious prosecution claims against Dean Willis and David McClure, members of the Shreveport Police Department, based on an alleged wrongful arrest without probable cause, which ultimately led to Bledsoe's two-year incarceration for crimes he did not commit. The district court denied Willis

————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

and McClure's motion to dismiss Bledsoe's claims under Federal Rule of Civil Procedure 12(b)(6). We AFFIRM.

## I.

On August 4, 2015, McClure responded to a reported burglary at a residence, the Dalzell Street Property managed by Port City Realty.[1] After arriving to the scene, McClure interviewed the burglary victim and Dalzell Street Property tenant Sandra Robinson. Robinson told McClure that she had not been to the Dalzell Street Property since August 2, 2015, and that when she arrived back home, she noticed that the front door was unlocked, the window of the front door was broken, and certain items were missing. At that time, McClure collected fingerprints from the doorknobs and window. The fingerprints came back from the lab as "not identifiable."

Between August 4, 2015, and August 7, 2015, Port City Realty contracted with Bledsoe to repair the front-door window at the Dalzell Street Property. Port City Realty had previously contracted with Bledsoe to complete handyman repair projects at three different sites. Bledsoe alleges that he was cut by glass while repairing the front door window.

On August 7, 2015, McClure returned to the Dalzell Street Property to conduct a follow-up interview with Robinson. The window was repaired before McClure's follow-up visit. During McClure's interview, Robinson said she had noticed blood near the fixed window. The blood had not been mentioned in McClure's earlier August 4 narrative report. McClure took a sample of that blood and submitted it for analysis. The sample came back as

---

[1] In reciting the following allegations from Bledsoe's complaint, we "accept all facts as pleaded and construe them in the light most favorable to [Bledsoe]." *See Guerra v. Castillo*, 82 F.4th 278, 282 (5th Cir. 2023) (citing *Crane v. City of Arlington*, 50 F.4th 453, 461 (5th Cir. 2022); *Vardeman v. City of Hous.*, 55 F.4th 1045, 1049 (5th Cir. 2022)).

a match for Bledsoe. Willis later contacted Robinson, who said she neither knew Bledsoe nor gave Bledsoe permission to enter the property.

Neither Willis nor McClure documented asking Robinson: (1) whether she owned the Dalzell Street Property; (2) whether she had personally repaired the broken front-door window, and if not, whether she knew who had repaired it; or (3) if any other items were damaged during the burglary.

Willis sought the issuance of an arrest warrant based on the DNA match to the blood collected. The judge who issued Bledsoe's arrest warrant relied on Willis's affidavit and the facts stated therein from McClure's investigation to conclude that probable cause existed to arrest Bledsoe. Bledsoe was arrested for simple burglary of an inhabited dwelling. He pleaded not guilty. While out on bond, Bledsoe failed to appear for a hearing on time and was arrested. Bledsoe was incarcerated for two years and spent an additional year on home confinement while awaiting trial. In January 2021, after the charges were amended to the lesser offense of criminal trespass, a judge found Bledsoe not guilty because of a lack of evidence.

On December 21, 2021, Bledsoe filed this suit pursuant to § 1983 and Louisiana state law. He brought several claims against Willis and McClure, Caddo Parish Assistant District Attorney Brittany Arvie, and Caddo Parish District Attorney James E. Stewart, Sr. Specifically, Bledsoe brought federal and state malicious prosecution claims against Willis and McClure, a federal malicious prosecution claim against Arvie, and two municipal liability claims against Stewart. Bledsoe contends that Willis and McClure "caused the arrest and commencement of criminal proceedings against [him] without sufficient probable cause based on a clearly deficient investigation." Moreover, he seeks relief under § 1983 "based on the wrongful arrest, and reckless filing of a warrant without probable cause." As it relates to this

No. 23-30238

appeal, Bledsoe's complaint provides the following regarding his malicious prosecution claims:

> Neither Defendant McClure nor Defendant Willis wrote in their official narrative reports that the broken front door window had been repaired when Defendant McClure went to the Dalzell Street Property on August 7, 2015, during which visit he was directed to blood near the front door window.

> Neither Defendant McClure nor Defendant Willis wrote in their official narrative reports that Robinson was merely a rental tenant at the Dalzell Street Property.

> Neither Defendant McClure nor Defendant Willis contacted the Dalzell Street Property owner or property management company to inquire whether anyone, including Mr. Bledsoe, had permission to enter the Dalzell Street Property.

> Defendant Willis submitted an affidavit for an arrest warrant directed to Mr. Bledsoe based on the investigation by Defendant McClure and Defendant Willis.

> The affidavit omitted the key facts described above, specifically that Robinson was merely a rental tenant of the Dalzell Street Property, that a property management company was authorized to make repairs at the Dalzell Street Property, and that the broken window had been repaired between the dates Defendant McClure visited the Dalzell Street Property.

> Those omissions resulted from the wanton and reckless disregard by Defendant Willis and Defendant McClure for Mr. Bledsoe's constitutional rights.

> **Those omissions were material and were recklessly, intentionally, or knowingly omitted from the affidavit for arrest warrant.**

> But for those omissions, an arrest warrant was issued for Mr. Bledsoe for simple burglary of an inhabited dwelling, Louisiana R. S. 14:62.2.

4

The day trial began, the burglary charge was dropped and replaced with criminal trespassing, Louisiana R.S. 14:63, and misdemeanor theft, Louisiana R.S. 14:67B(4).

Mr. Bledsoe was found not guilty on both charges at trial.

The actions of Defendant Willis and Defendant McClure directly and proximately caused compensable injury to Mr. Bledsoe.

Willis and McClure moved for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) on qualified immunity grounds. The district court denied the motion. And Willis and McClure timely appealed. We have jurisdiction under 28 U.S.C. § 1291.

## II.

"This court reviews de novo a district court's grant or denial of a Rule 12(b)(6) motion to dismiss." *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009). "To survive a motion to dismiss, a plaintiff must plead enough facts to state a claim to relief that is plausible on its face." *Guerra v. Castillo*, 82 F.4th 278, 284 (5th Cir. 2023) (citing *Crane v. City of Arlington, Texas*, 50 F.4th 453, 461 (5th Cir. 2022)). A claim is facially plausible when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Martinez v. Nueces County, Tex.*, 71 F.4th 385, 388 (5th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "When reviewing a motion to dismiss, we must accept all facts as pleaded and construe them in the light most favorable to the plaintiff." *Guerra*, 82 F.4th at 284 (quoting *Crane*, 50 F.4th at 461).

A plaintiff may bring a Fourth Amendment claim under § 1983 for malicious prosecution, even in the absence of "some affirmative indication of innocence." *Thompson v. Clark*, 596 U.S. 36, 49 (2022). "[T]he gravamen of the Fourth Amendment claim for malicious prosecution . . . is the wrongful initiation of charges without probable cause." *Id.* at 43. For decades, "it has

been clearly established that a defendant's Fourth Amendment rights are violated if (1) the affiant, in support of the warrant, includes 'a false statement knowingly and intentionally, or with reckless disregard for the truth' and (2) 'the allegedly false statement is necessary to the finding of probable cause.'" *Winfrey v. Rogers*, 901 F.3d 483, 494 (5th Cir. 2018) (quoting *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)). After *Thompson*, this court clarified the six elements for a claim of malicious prosecution, including: "(1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages." *Armstrong v. Ashley*, 60 F.4th 262, 278–79 (5th Cir. 2023) (citation and quotation omitted).

"The doctrine of qualified immunity protects public officials from liability for civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jennings v. Patton*, 644 F.3d 297, 300 (5th Cir. 2011).

The issue of whether qualified immunity applies "should be resolved 'at the earliest possible state in the litigation.'" *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). We undertake a two-pronged analysis to determine whether a government official is entitled to qualified immunity, inquiring "(1) whether the officer's alleged conduct has violated a federal right and (2) whether the right in question was 'clearly established' at the time of the alleged violation, such that the officer was on notice of the unlawfulness of his or her conduct." *Bailey v. Iles*, 78 F.4th 801, 807 (5th Cir. 2023) (quoting *Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019)). An officer is entitled to qualified immunity "if there is no violation, or if the conduct did not violate law clearly established at the time." *Id.* (quoting *Cole*, 935 F.3d at 451).

For a right to be "clearly established," "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, (1987). The right can be clearly established either by the Supreme Court's precedent or our own. *Shumpert v. City of Tupelo*, 905 F.3d 310, 320 (5th Cir. 2018). Ultimately, "[t]he central concept is that of 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'" *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc) (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)).

When confronted with a qualified-immunity defense at the pleadings stage, the plaintiff must plead "facts which, if proved, would defeat [the] claim of immunity." *Guerra*, 82 F.4th at 285 (quoting *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019)) (alteration in original) (quotation omitted). The pleading standards remain "the same when a motion to dismiss is based on qualified immunity." *Id.* "'The crucial question is whether the complaint pleads facts that, if true, would permit the inference that Defendants are liable under § 1983, and would overcome their qualified immunity defense.'" *Id.* at 285 (quoting *Terwilliger v. Reyna*, 4 F.4th 270, 280 (5th Cir. 2021)). At the motion-to-dismiss stage, "[i]t is the plaintiff's burden to demonstrate that qualified immunity is inappropriate." *Terwillinger*, 4 F.4th at 280 (alteration in original).

No. 23-30238

## III.

## A.

First, we consider whether Bledsoe sufficiently alleged facts for his malicious prosecution claims against Willis and McClure.[2]  Turning to the six elements required for malicious prosecution, Willis and McClure argue that Bledsoe fails on the fourth and fifth elements, but they do not discuss the other elements.  We agree with the district court's determination that:

> When accepted as fact, [Bledsoe's] allegations plausibly demonstrate that a criminal proceeding was commenced (the first element), the criminal proceeding was the direct result of information that Willis and McClure gathered during their investigation (the second element), and that the proceeding came to a natural conclusion (the third element). Furthermore, Bledsoe adequately pleads the sixth element by alleging that he has suffered economic damages, which include the loss of his social security benefits and the loss of his job, among others. The Court also finds that Bledsoe pleads the fourth element of probable cause with sufficient plausibility.

On the absence of probable cause (the fourth element), Willis and McClure argue that the independent intermediary doctrine insulates them from liability.  But as the district court explained, that doctrine does not apply here because the trial judge who issued the warrant for Bledsoe's arrest relied on a defective affidavit.  The independent-intermediary doctrine provides that "if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party."

---

[2] Because the elements for the federal and Louisiana state malicious prosecution claims run coextensively, we analyze them simultaneously. *See, e.g.*, *Armstrong*, 60 F.4th at 279.

8

*Anokwuru v. City of Hous.*, 990 F.3d 956, 963 (5th Cir. 2021) (internal quotation marks and citations omitted), *abrogated on other grounds by Guerra*, 82 F.4th 278. However, "[a]n officer can still be liable if the officer deliberately or recklessly provides false, material information for use in an affidavit *or makes knowing and intentional omissions* that result in a warrant being issued without probable cause." *Id*. at 964 (emphasis added) (citations omitted); *see also Winfrey*, 901 F.3d at 494; *Mayfield v. Currie*, 976 F.3d 482, 487 (5th Cir. 2020), *as revised* (Sept. 23, 2020) (clarifying that the independent-intermediary doctrine "is not absolute").[3] "If the facts omitted from an affidavit are 'clearly critical' to a finding of probable cause, then recklessness may be inferred from the proof of the omission itself." *Hale v. Fish*, 899 F.2d 390, 400 (5th Cir. 1990) (citation omitted).

Here, Bledsoe argues that Willis's and McClure's actions and omissions "tainted" the judge's evaluation of whether to issue the warrant for Bledsoe's arrest. *See, e.g.*, *Arizmendi v. Gabbart*, 919 F.3d 891, 897 (5th Cir. 2019) (explaining that the independent intermediary doctrine does not apply "if . . . the 'deliberations of the intermediary were in some way tainted by the actions of the defendant.'") (quoting *McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017)). Specifically, Bledsoe's complaint alleges, among other things: (1) failure to document who owned the Dalzell Street Property; (2) failure to document that Robinson was merely a tenant; (3) failure to

---

[3] Our sister circuits have similarly considered whether the absence of probable cause defeats qualified immunity. *See, e.g.*, *Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999) ("An officer contemplating an arrest is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing by itself) suggests that probable cause exists."); *Garcia v. Does*, 779 F.3d 84, 93 (2d Cir. 2015) (citation omitted) ("[P]robable cause may be defeated if the officer deliberately disregards facts *known to him* which establish justification."); *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1023–24 (9th Cir. 2009) (citation omitted) (holding that courts cannot ignore "facts tending to dissipate probable cause" because probable cause is a totality-of-the-circumstances determination).

document that the broken front-door window initially observed had been fixed before McClure returned to the scene; (4) failure to determine who fixed the broken front-door window; and (5) failure to contact the Dalzell Street Property owner or the property management agent to inquire whether anyone, including Bledsoe, had permission to enter the Dalzell Street Property. Further, Bledsoe contends that "[t]hose omissions were material and were recklessly, intentionally, or knowingly omitted from the affidavit for arrest warrant."

At this stage of the proceedings, Bledsoe has sufficiently alleged that the officers deliberately or recklessly omitted relevant information. Willis and McClure neither dispute that several pieces of information were absent from the officers' reports and affidavit, nor provide copies of the warrant or affidavit to rebut Bledsoe's allegations. Moreover, his allegations suggest that Willis and McClure had several chances to identify information that was "clearly critical" to a finding of probable cause. *Hale*, 899 F.2d at 400. "[R]ecklessness may be inferred from the proof of the omission itself." *Id.* For example, when McClure returned to the Dalzell Street Property on August 7, he failed to note in his report that the broken window had been repaired. McClure only noted the "splatch" of blood that he and Robinson saw three days after the initial report. Then, eight months later, Willis made a supplemental report that again failed to include that the window was fixed. And, a month after that, Willis failed again to include this information in his supplemental report. Subsequently, Willis signed an affidavit for an arrest warrant identifying the broken window and Bledsoe's blood sample.

We construe Bledsoe's complaint "in the light most favorable to the plaintiff." *Guerra*, 82 F.4th at 284. "If proven, [Bledsoe's] allegations would demonstrate the willful omission of exculpatory facts and statements that should have been presented." *Guidry v. Cormier*, No. 20-1430, 2021 WL 3824129, at *5 (W.D. La. Mar. 8, 2021). Thus, the independent-

intermediary doctrine does not apply when, as here, "the Affidavit contained so many relevant omissions that it did not accurately present the probable cause issue to [the] Judge." *Id.*

On malice (the fifth element), Willis and McClure argue that Bledsoe must allege that the officers either knowingly or intentionally omitted exculpatory information from their incident report, or that their conduct arose from hate or private advantage. Willis and McClure contend that Bledsoe has not pleaded either and that his allegation concerning their "clearly deficient investigation" amounts to mere "negligence." While it is true, at least at this preliminary stage, that Bledsoe has no allegations detailing how the officers *knew* of exculpatory information, one could still reasonably conclude that the officers failed to make the most basic inquiries that would have yielded such information, or recklessly disregarded the truth. We hold officers liable for "the intentional or reckless omission of material facts from a warrant application[.]" *See, e.g., Hale*, 899 F.2d at 400; *Wilson v. Stroman*, 33 F.4th 202, 211–12 (5th Cir. 2022), *cert. denied sub nom. Reyna v. Wilson*, 143 S. Ct. 425 (2022), *and cert. denied*, 143 S. Ct. 426 (2022). And we have extended that liability to any "officer who has provided information for the purpose of its being included in a warrant application" and therefore "has assisted in preparing" it. *Melton v. Phillips*, 875 F.3d 256, 262 (5th Cir. 2017) (en banc). Based on Bledsoe's allegations, there is a plausible inference of reckless omission—and that is all he must show. Bledsoe therefore alleges with sufficient specificity at the 12(b)(6) stage that Willis and McClure acted recklessly by omitting facts material to the finding of probable cause.

## B.

Next, we address whether Willis and McClure are entitled to qualified immunity based on clearly established law.[4]  As we must, we acknowledge this court's recent decision in *Guerra*, 82 F.4th 278, that was issued after the district court's decision.  In *Guerra*, this court affirmed a district court's 12(b)(6) dismissal of a § 1983 malicious prosecution claim "because this court's caselaw explicitly disclaimed the existence of a constitutional claim for malicious prosecution at the time of [plaintiff's] alleged conduct in 2018 and 2019 [i.e., before *Thompson v. Clark*, 596 U.S. 36 (2022)]."  *Id.* at 288-89.  Nonetheless, as *Guerra* explained, this court has stated repeatedly that the "Fourth Amendment right to be free from arrest without probable cause is clearly established."  *Id.* at 286 (citing *Terwilliger*, 4 F.4th at 286).  Indeed, this court has found that an officer was "not entitled to qualified immunity" because the plaintiff alleged that the officer "violated the Fourth Amendment by signing objectively unreasonable arrest-warrant affidavits." *Winfrey*, 901 F.3d at 491 (5th Cir. 2018) (citing *Winfrey v. San Jacinto County*, 481 Fed. App'x 969, 979 (5th Cir. 2012)).  Long before the conduct at issue in this case, it was "clearly established that a defendant's Fourth Amendment rights are violated if (1) the affiant, in support of the warrant, includes 'a false statement knowingly and intentionally, or with reckless disregard for the truth' and (2) 'the allegedly false statement is necessary to the finding of probable cause.'"  *Id.* (quoting *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)).  Accepting Bledsoe's complaint as true, and determining

---

[4] Bledsoe claims, pursuant to § 1983, that Willis and McClure violated his Fourth Amendment right to be free from unreasonable searches and seizures.  Willis and McClure moved for dismissal before the Supreme Court issued *Thompson v. Clark* and did not seek to revise their motion once that opinion was issued.  Furthermore, on appeal, Willis and McClure do not discuss whether a Fourth Amendment claim for malicious prosecution under § 1983 is clearly established law for purposes of qualified immunity.

that Willis and McClure are not shielded by qualified immunity, the district court found the following:

> [T]he crux of Bledsoe's claim is that the trial court judge was not privy to the full scope of information available during the criminal investigation and that this incomplete information was the direct result of Willis and McClure's recklessness and failure to disclose material information. Bledsoe plausibly alleges that an arrest warrant would not have been issued but for the reckless investigation that omitted exculpatory evidence regarding the source of the blood and Bledsoe's contract with Port City Realty.

We agree with the district court based on the prevailing precedent in the Supreme Court and this circuit. Although this court did not recognize a "freestanding constitutional right to be free from malicious prosecution" at the time of Willis's and McClure's investigation, we must recognize that "'the initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection—the Fourth Amendment if the accused is seized and arrested, for example." *Winfrey*, 901 F.3d at 491 (quoting *Castellano v. Fragozo*, 352 F.3d 939, 945, 953 (5th Cir. 2003) (en banc), *overruled by Thompson*, 596 U.S. at 36).[5]

Even before *Thompson*, the Supreme Court considered whether a plaintiff had plausibly stated a Fourth Amendment claim when he was arrested and charged with unlawful possession of a controlled substance based on false reports written by a police officer and an evidence technician. *See, e.g.*, *Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 360 (2017). There, the

---

[5] *See, also e.g.*, *Caskey v. Fenton*, No. 22-3100, 2022 WL 16964963, at *11 (6th Cir. Nov. 16, 2022) (rejecting the qualified immunity defense regarding clearly established law for § 1983 malicious prosecution claims); *Crider v. Williams*, No. 21-13797, 2022 WL 3867541, at *8 (11th Cir. Aug. 30, 2022) (same).

No. 23-30238

Court said the plaintiff's "claim fits the Fourth Amendment, and the Fourth Amendment fits [the plaintiff's] claim, as hand in glove." *Id.* at 364. And the Court held "that the Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process." *Id.* at 369. Here, Bledsoe's claim turns on the Fourth Amendment because he alleges that Willis and McClure "caused the arrest and commencement of criminal proceedings against [him] without sufficient probable cause based on a clearly deficient investigation." Thus, the Supreme Court's and our court's precedent clearly establish Bledsoe's alleged constitutional violation for purposes of qualified immunity.

## IV.

Accordingly, we agree with the district court that Bledsoe plausibly alleges federal and state claims of malicious prosecution against Willis and McClure, and that at the motion to dismiss stage, Bledsoe overcomes the qualified immunity defense.

AFFIRMED.