# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 28, 2023

Lyle W. Cayce
Clerk

No. 21-51208

United States of America,

*Plaintiff—Appellee*,

*versus*

Clarence Edward Roper,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:21-CR-65-1

Before Higginbotham, Jones, and Oldham, *Circuit Judges*.

Per Curiam:

Clarence Edward Roper was convicted after a bench trial of possession of a firearm by a felon. In this appeal, Roper contends that the district court erred in denying his motion to suppress evidence. We AFFIRM.

No. 21-51208

## I.

"When reviewing the denial of a motion to suppress, we review questions of law *de novo* and findings of fact for clear error."[1] "Factual findings are clearly erroneous only if a review of the record leaves this Court with a definite and firm conviction that a mistake has been committed."[2] Determining "[w]hether there is sufficient evidence to support reasonable suspicion[,]" at issue in this case, is a question of law reviewed de novo.[3]

"Demonstrating reasonable suspicion is the Government's burden."[4] Where, as occurred here, "a district court's denial of a suppression motion is based on live oral testimony, the clearly erroneous standard is particularly strong because the judge had the opportunity to observe the demeanor of the witnesses."[5] Moreover, "[e]vidence is viewed in the light most favorable to the party that prevailed in the district court—in this case, the Government."[6] Ultimately, "[a] district court's ruling to deny a suppression motion should be upheld 'if there is any reasonable view of the evidence to support it.'"[7]

---

[1] *United States v. McKinney*, 980 F.3d 485, 491 (5th Cir. 2020) (citing *United States v. Bolden*, 508 F.3d 204, 205 (5th Cir. 2007)).

[2] *United States v. Hearn*, 563 F.3d 95, 101 (5th Cir. 2009) (internal quotation marks and citation omitted).

[3] *McKinney*, 980 F.3d at 491 (citing *United States v. Monsivais*, 848 F.3d 353, 357 (5th Cir. 2017)).

[4] *Id.* (citing *United States v. Hill*, 752 F.3d 1029, 1033 (5th Cir. 2014)).

[5] *United States v. Nelson*, 990 F.3d 947, 953 (5th Cir.) (citing *United States v. Gibbs*, 421 F.3d 352, 357 (5th Cir. 2005)), *cert. denied*, 142 S. Ct. 490 (2021).

[6] *Id.* at 952 (citing *United States v. Rodriguez*, 702 F.3d 206, 208 (5th Cir. 2012)).

[7] *Id.* (citing *United States v. Massi*, 761 F.3d 512, 520 (5th Cir. 2014)).

No. 21-51208

## II.

At approximately 12:30 a.m. on February 21, 2021, a Midland resident called the Midland Police Department ("MPD") to report an individual entering her backyard.[8] MPD Officer Kienan Goodnight responded to the call and took photos of the resident's security camera footage that recorded the alleged prowler. Shortly after the call, MPD Sergeant William Welch was driving in the area and noticed a then-unidentified individual near the fenceline of a corner lot. The individual dipped his shoulders as if trying to hide from Welch.

Welch stopped his police cruiser at the entrance to the alley and exited the vehicle, prompting the then-unidentified individual to begin walking towards Welch with his hands raised. The individual stated without prompting that "[t]wo Mexican dudes" "in a black truck [were] chasing [him]." Welch then directed the individual to place his hands on the police cruiser and to identify himself, which he did: Clarence Edward Roper. Welch told Roper that he was going to pat him down for weapons and did so while asking Roper additional questions.

Approximately two minutes into this stop, as Welch continued to speak with Roper, Goodnight arrived and showed Welch the picture of the prowler he had obtained from the resident's security footage. The photograph showed an individual who, like Roper, was a Black male with a mustache and earring stud; however, the photographed prowler appeared substantially younger and was wearing clothing nothing like what Roper donned. Welch nevertheless proceeded to ask why Roper was "in some lady's back yard"; Roper did not deny the implied accusation but instead

---

[8] This individual is referred to as a "prowler" in the Parties' submissions. We adopt this here for consistency and clarity.

responded, "I was jumping fences, that's why." Welch speculated that the prowler's jacket in the photograph was a different color because the image was taken from a security-camera in night vision mode and had been captured in black and white. Roper then stated that the man in the photograph was the one who was chasing him. After radioing in Roper's identifying information, Welch walked along the fence line by which Roper was originally hiding and discovered a firearm on the ground. Upon this discovery, Welch promptly placed Roper in handcuffs, explained why he was doing so, and read Roper his rights. Roper protested that the gun was not his.

Following a hearing to suppress the gun, the district court "conclude[d] that it was not reasonable to think that [Roper] was the prowler shown on the security footage." Nonetheless, the district court denied Roper's motion:

> [T]here was reasonable suspicion to continue Defendant's detention after Officer Goodnight arrived with a photograph of the prowler. Sergeant Welch observed [Roper] hiding in the alley at approximately one o'clock in the morning, saw him come forward in a manner potentially consistent with hiding contraband, and [Roper] recited a story about being chased that was inconsistent with his physical appearance and demeanor. Additionally, [Roper] admitted to "jumping fences." These are specific and articulable facts that support reasonable suspicion that criminal activity was afoot. Shortly thereafter, Sergeant Welch discovered the pistol at the place in the alley where [Roper] was hiding.

The district court subsequently held a brief bench trial wherein Judge Counts convicted Roper and later sentenced him to a 105-month term of imprisonment and a subsequent three-year term of supervised release. Roper filed timely notice of his appeal.

No. 21-51208

## III.

The Fourth Amendment protects against unreasonable searches and seizures.[9] Pursuant thereto, "[w]arrantless searches and seizures are presumptively unreasonable, subject to certain exceptions."[10] The Supreme Court carved out such an exception in *Terry v. Ohio*, which held that "limited searches and seizures are not unreasonable when there is a reasonable and articulable suspicion that a person has committed a crime."[11] This Court "employ[s] a two-part test to determine whether there was 'reasonable suspicion'": first, "whether the officer's action was justified at its inception," and, second, "whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop.'"[12]

Broadly speaking, the Supreme Court has "deliberately avoided reducing" the "somewhat abstract" concept of reasonable suspicion "to a neat set of legal rules."[13] Some principles nevertheless guide this inquiry. For example, reasonable suspicion need not be found solely on one fact: "factors which by themselves may appear innocent, may in the aggregate rise to the level of reasonable suspicion."[14] As the Supreme Court noted, "*Terry* itself

---

[9] U.S. CONST. amend IV.

[10] *McKinney*, 980 F.3d at 490 (citing *Hill*, 752 F.3d at 1033).

[11] *United States v. Santiago*, 310 F.3d 336, 340 (5th Cir. 2002) (citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968)).

[12] *United States v. Jenson*, 462 F.3d 399, 404 (5th Cir. 2006) (quoting *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc)).

[13] *United States v. Arvizu*, 534 U.S. 266, 274 (2002) (internal quotation marks and citations omitted).

[14] *United States v. Ibarra-Sanchez*, 199 F.3d 753, 759 (5th Cir. 1999).

involved a series of acts, each of them perhaps innocent if viewed separately, but which taken together warranted further investigation."[15] Accordingly,

> [courts] must look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person."[16]

Additionally, while reasonable suspicion exists if the officer "can point to specific and articulable facts" supporting a reasonable belief "that a particular person has committed, is committing, or is about to commit a crime,"[17] *Terry* does not require officers to have a "particularized suspicion of a particular, specific crime."[18] Finally, "[i]f the officer develops reasonable suspicion of additional criminal activity during his investigation of the circumstances that originally caused the stop, he may further detain its occupant[] for a reasonable time while appropriately attempting to dispel this reasonable suspicion."[19] "Detention, however, may last no longer than

---

[15] *United States v. Sokolow*, 490 U.S. 1, 9–10 (1989) (internal quotation marks and citation omitted).

[16] *Arvizu*, 534 U.S. at 273 (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)).

[17] *Monsivais*, 848 F.3d at 357 (internal quotation marks and citation omitted); *see Terry*, 392 U.S. at 21.

[18] *United States v. Pack*, 622 F.3d 383, 383 (5th Cir. 2010).

[19] *United States v. Pack*, 612 F.3d 341, 350 (5th Cir. 2010), *opinion modified on unrelated grounds on denial of reh'g*, 622 F.3d 383.

required to effect the purpose of the stop."[20] Simply put, Welch had a reasonable suspicion that Roper was engaged in criminal activity in the alley.

Three factors support this conclusion. First, Roper's location and timing provide a strong foundation for finding reasonable suspicion. While one's "presence in an area of expected criminal activity, *standing alone*, is not enough to support a reasonable, particularized suspicion that the person is committing a crime," the "relevant characteristics of a location" can contribute to a finding of reasonable suspicion,[21] and the timing of one's movements are a "permissible consideration" in reasonable suspicion analysis,[22] including holding that a defendant's "specific moves" gave rise to reasonable suspicion where they took place "at night, in a high crime area."[23] That Roper was discovered hiding after midnight near the location of a crime supports a finding of reasonable suspicion.

Second, Roper's emergence and subsequent actions similarly give rise to reasonable suspicion. As Welch approached, Roper emerged from a secreted location and offered information without being asked. Welch testified that Roper's actions "walking out of the alley as [he] approached" contributed to his suspicion because "it was possible that [Roper] had

---

[20] *Jenson*, 462 F.3d at 404 (citing *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005)).

[21] *Illinois v. Wardlow*, 528 U.S. 119, 124, 126 (2000) (emphasis added); *see also United States v. Jaquez*, 421 F.3d 338, 340–41 (5th Cir. 2005) (holding that, where the only facts to justify a stop of a red vehicle was that a red vehicle was involved in a crime fifteen minutes ago, the police officer lacked reasonable suspicion to stop the car); *cf. Adams v. Williams*, 407 U.S. 143, 144, 147–48 (1972) (noting, notwithstanding this rule, that where a *Terry* stop occurred—including in a "high crime area"—was a relevant contextual consideration).

[22] *See United States v. Villalobos*, 161 F.3d 285, 289 (5th Cir. 1998); *United States v. Lujan-Miranda*, 535 F.2d 327, 329 (5th Cir. 1976).

[23] *United States v. Rideau*, 969 F.2d 1572, 1575 (5th Cir. 1992) (en banc).

abandoned something – whether it be drugs, some type of contraband – in the alley and was distancing himself from that." Although in another context, this Court has previously found reasonable suspicion from efforts to distance oneself from contraband.[24] We apply the same consideration and credit here.

Third, Roper's inconsistent and nonsensical answers to Welch's questions gave rise to reasonable suspicion. A detainee's inconsistent and implausible explanations are pertinent to whether an officer has a reasonable suspicion to elongate a stop.[25] Roper stated that two individuals were "chasing" him, but Roper "didn't appear to be out of breath like he had been running," nor did he "appear to be sweating or anything like" as if "he was running from someone."[26] And when Welch asked if Roper "kn[e]w these people that [we]re chasing you," Roper responded affirmatively, but when Welch asked for their names, Roper said only "[t]hey are Mexican, man, but I[] can't pronounce their names." These statements, when viewed in concert with Roper's timing and location, are themselves "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."[27, 28]

---

[24] *See United States v. Figueroa*, No. 93-2664, 1994 WL 574186, at *2 (5th Cir. Oct. 4, 1994) (unpublished) (per curiam) (finding reasonable suspicion in part because the officer testified that the trafficker had checked his luggage in a fashion "typical of drug traffickers who wish to distance themselves from their contraband and begin traveling as soon as possible").

[25] *See United States v. Cavitt*, 550 F.3d 430, 437 (5th Cir. 2008); *Pack*, 612 F.3d at 360–61.

[26] The body camera footage confirms this perception.

[27] *Terry*, 392 U.S. at 21.

[28] Two additional facts about the discussion, while not vital, are relevant. First, Roper said that he was trying to go to the police station, yet upon the police's arrival, he expressed no appreciation for their aid, nor did he request protection or a ride to the station.

No. 21-51208

Accepting the district court's conclusion that it was unreasonable for Welch to believe Roper was the prowler based on the photograph does not end the inquiry. Even if Welch and Goodnight came to this realization in the moment, Roper's furtive actions and inconsistent, implausible statements remained unresolved. When Welch effectively said to Roper that he was caught on camera trespassing, Roper did not contest the accusation, but responded in such a way that created *additional* suspicion for two reasons: 1) Roper admitted that he was engaging in suspicious activity by "jumping fences" after midnight; and, 2) Roper claimed the photographed man "was *the* person that was chasing [him]"—singular—despite initially claiming that *two* individuals—plural—were chasing him. In sum, even if Welch and Goodnight realized in the course of the seizure that Roper was not the individual in the photograph, there remained numerous articulable and suspicious facts supporting a reasonable suspicion of wrongdoing sufficient to extend the seizure, namely Roper's actions and statements before the photograph's arrival as well as his suspicious answers in response to questions generated by the picture itself. The district court did not err in denying Roper's motion.

* * * *

We AFFIRM.

---

Second, Roper volunteered without prompting that he was on probation for aggravated assault.