# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 14, 2025

Lyle W. Cayce
Clerk

———————————

No. 24-50431

———————————

United States of America,

*Plaintiff—Appellee*,

*versus*

James Eric Larremore,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 4:23-CR-289-1

_____

Before Elrod, *Chief Judge*, Engelhardt, *Circuit Judge*, and Guidry, *District Judge*.[*]

Greg Gerard Guidry, *District Judge*:

Defendant-Appellant James Eric Larremore confessed to secreting illegal aliens inside a locked horse trailer. The district court denied his motion to suppress. Larremore conditionally pleaded guilty, and now he appeals the district court's ruling. We find no Fourth Amendment violation and accordingly AFFIRM.

_____

[*]United States District Judge for the Eastern District of Louisiana, sitting by designation.

No. 24-50431

I.

A.

On July 9, 2023, at approximately 1:45 p.m., Brewster County Deputy Christopher Colona was parked on a remote section of U.S. Highway 385 monitoring traffic near a border patrol checkpoint at the time of a regularly scheduled border patrol shift change. Deputy Colona knew smugglers often carried out their illegal activities during the shift change. The Highway 385 checkpoint is a short distance from Marathon, Texas, and is one of the few checkpoints near the U.S.-Mexico border that is not continuously manned. Deputy Colona saw a white pickup truck, driven by Larremore, traveling north pulling an empty metal horse trailer. The trailer had an open-air section for horses and an enclosed compartment large enough to hold people.

Deputy Colona recognized the truck and the driver. He had earlier received a tip from a fellow officer that Larremore was possibly involved in the smuggling of people and/or drugs. Brewster County, the largest county in Texas, encompasses over 6,000 square miles but is sparsely populated. Deputy Colona knew Larremore worked on his father's ranch, which was located on the opposite end of the county.

Deputy Colona turned onto the highway, briefly accelerated, and then followed behind Larremore for slightly more than a minute. Unprompted, Larremore guided his truck and trailer to the shoulder. Deputy Colona pulled in behind him. Deputy Colona never directed Larremore's movement. He did not engage his siren, turn on his emergency lights, physically block Larremore's vehicle, or otherwise explicitly suggest that Larremore had to stop. Deputy Colona parked his patrol car behind Larremore's trailer.

Deputy Colona then walked to the passenger side of Larremore's truck. Larremore extended his hand for a greeting. Deputy Colona reached his right arm into the truck for a handshake while resting his left hand on the

2

front passenger side door. Deputy Colona stated it was "good to see you" and asked Larremore how he was doing, whether he had any work, and where he was going. Larremore replied he was travelling to Odessa, Texas, to sell the horse trailer. While speaking with Larremore, Deputy Colona rested his arm on the windowsill and observed an open alcohol container in plain view. Deputy Colona began to walk to his patrol car while asking Larremore to "[h]ang on a sec for me." Deputy Colona testified he paused the conversation in order to radio his position to headquarters for officer safety, according to protocol.

Larremore did not wait for the deputy to make the call. Instead, he immediately exited his truck from the driver side, walked in between the truck and trailer, and met Deputy Colona on the shoulder. Deputy Colona could see a padlock locking the door to the enclosed compartment of the trailer, and he asked Larremore if he had a key. Larremore said he did not. When asked what was inside the locked compartment, Larremore replied that he had some saddles. Deputy Colona found it suspicious that Larremore would be selling a horse trailer containing saddles locked in a compartment to which he had no key. He told Larremore he would like to look inside. Larremore responded with an ambiguous shrug.

Larremore made additional inconsistent and suspicious statements. For example, he claimed: (1) that he had just delivered a horse in Terlingua, Texas, a border town hundreds of miles away from his father's ranch; (2) that he was selling a trailer registered in another person's name; and (3) that his girlfriend, whose name he struggled to remember, was the one who had locked the compartment.

Deputy Colona explained that he was concerned Larremore was smuggling drugs and stated he "want[ed] to look inside" the trailer to allay his suspicions. He suggested he do so by cutting the lock with bolt cutters.

For approximately the next minute, Colona continued to try to persuade Larremore to allow him to look inside the trailer. At that point, Colona told Larremore that he "need[ed] to look inside the trailer." Larremore agreed and said, "Well, I guess go get your bolt cutters."

Larremore quickly began to equivocate. A nine-minute conversation ensued during which Larremore asked questions and made statements. He asked what would happen if he did not allow Deputy Colona to look in the trailer. He also stated, "he has rights," was "thinking, thinking, thinking," and this was a "big decision." Larremore ultimately refused to allow the compartment to be opened.

Larremore continued to give inconsistent and suspicious statements throughout the encounter. He initially could not remember the trailer buyer's name, despite claiming he had recently spent a week with him, and stated he last used the trailer a week after it was allegedly locked by his girlfriend. Larremore also repeatedly stated that there was something "embarrassing" in the trailer.

Deputy Colona later told Larremore that he had probable cause to conduct a search of Larremore's truck, because he had viewed the open alcohol container located in plain sight. He asked Larremore if he would find a key to the trailer in the truck. At this point, Larremore confessed that he had "three cousins" in the trailer and quickly produced the key, which had been hidden under the fender of the horse trailer. Upon unlocking the compartment, Deputy Colona discovered three illegal aliens inside.

All of the events were captured on Deputy Colona's dash camera and body camera.

B.

Larremore was charged with two counts of transporting illegal aliens in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii), (a)(1)(A)(v)(I), (B)(i), and (B)(ii). He moved to suppress the evidence. The district court held a hearing on the motion during which Deputy Colona testified.

The district court denied the motion after finding that Larremore had been seized with reasonable suspicion. The district court reasoned that Larremore's consent to search the trailer, which it believed was never withdrawn, attenuated the taint from what it found to be a trespassory search and discovery of the open alcohol container in Larremore's truck. Larremore thereafter pleaded guilty to Count 2, an 8 U.S.C. §§ 1324(a)(1)(A)(ii) & (B)(ii) violation, and reserved his right to appeal the suppression ruling. Larremore was sentenced to 37 months of imprisonment and timely appealed the denial of his motion to suppress.

II.

When reviewing a district court's ruling on a motion to suppress, we review factual findings for clear error and legal conclusions *de novo*, viewing the evidence in the light most favorable to the prevailing party—in this case the government. *United States v. Alvarez*, 40 F.4th 339, 344 (5th Cir. 2022). We may also affirm the denial of a suppression motion on any basis supported by the record. *United States v. El-Mezain*, 664 F.3d 467, 540 (5th Cir. 2011).

The timing of a seizure is a factual finding reviewed for clear error. *United States v. Wise*, 877 F.3d 209, 215 (5th Cir. 2017). "A factual finding is not clearly erroneous as long as it is plausible in light of the record as a whole." *United States v. Gomez*, 623 F.3d 265, 268 (5th Cir. 2010) (quotation omitted). In reviewing the denial of a motion to suppress, the district court's ruling will be upheld "if there is any reasonable view of the evidence to support it." *United States v. Michalik*, 5 F.4th 583, 588 (5th Cir. 2021)

(citation omitted). The clearly erroneous standard is "particularly strong" when, as here, the denial of a suppression motion is based on live oral testimony. *United States v. Gibbs*, 421 F.3d 352, 357 (5th Cir. 2005) (quotation omitted). However, when testimony plainly conflicts with video evidence, we view "the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380–81 (2007).

Whether an officer had reasonable suspicion for a seizure requires *de novo* review. *United States v. Rico-Soto*, 690 F.3d 376, 379 (5th Cir. 2012). So, too, is our review of whether an officer's actions amount to an unconstitutional search. *United States v. Roberts*, 612 F.3d 306, 309 (5th Cir. 2010).

## III.

Larremore makes several arguments as to why we should overturn the district court's suppression ruling. Each is unsuccessful.

## A.

Larremore asserts he was seized without reasonable suspicion. He presents three alternative moments of seizure: when Deputy Colona (1) followed him on the highway over to the shoulder, (2) rested his forearm and hand on his truck, or (3) said "hang on a sec." These arguments fail.

First, Larremore argues Deputy Colona seized him when he followed Larremore to the shoulder.

A "seizure occurs when an officer '*objectively* manifests an intent to restrain' the liberty of an individual through…a show of authority." *United States v. Wright*, 57 F.4th 524, 530 (5th Cir. 2023) (quoting *Torres v. Madrid*, 592 U.S. 306, 317 (2021)). In the absence of physical force, a seizure occurs when; (1) an officer exerts a sufficient show of authority and (2) the

defendant submits to it. *Id.* at 531 (citing *Carroll v. Ellington*, 800 F.3d 154, 170 (5th Cir. 2015)).

An officer makes a sufficient show of authority when "all of the circumstances surrounding the incident [suggest that] a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). We ask "whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *United States v. Flowers*, 6 F.4th 651, 655 (5th Cir. 2021) (citation omitted). Recognized shows of authority include methods "meant to bring a person to a stop" like visual signals and physical blockades. *United States v. Morris*, 40 F.4th 323, 327 (5th Cir. 2022) (citations omitted).

A consensual encounter with police is not a seizure. *United States v. Cooper*, 43 F.3d 140, 145 (5th Cir. 1995). No individualized suspicion is required, and an officer can ask "questions of that individual. . .and request consent. . .as long as the police do not convey a message that compliance with their requests is required." *Id.* (citing *Florida v. Bostick*, 501 U.S. 429, 435 (1991)).

No pertinent case holds that simply following a car on a freely accessible highway is a show of force. On the contrary, there is "nothing particularly coercive about police observation in public." *United States v. Mask*, 330 F.3d 330, 337 (5th Cir. 2003). Deputy Colona did not activate his emergency lights or siren, nor did he direct Larremore to pull over. Larremore did so on his own accord.

Larremore's reliance on cases in which an officer deployed a visual signal or emergency lights is misplaced. In *Wright*, we held that an officer seized an individual when the officer pulled up behind a parked vehicle with her emergency lights on and commanded the driver to "stay in [his] car." 57 F.4th at 528, 532. At the time the officer's "emergency lights engaged, she []

show[ed] a sign of authority." *Id*. *Morris* concerned an officer who used a visual signal to flag down a car. 40 F.4th at 323, 327–28. Because Louisiana law created an obligation for any motorist to follow a police officer's direction, we held the motorist was seized by the visual signal. *Id.* at 327–28.

There is no comparable visual signal or directive in the instant case. Deputy Colona did not announce any commands or otherwise initiate a stop. Larremore pulled over to the shoulder on his own volition. Deputy Colona testified that he followed Larremore over to the shoulder, not to investigate, but to check on his welfare. A welfare check is generally not a seizure. *See, e.g.*, *Tyson v. Sabine*, 42 F.4th 508, 517 (5th Cir. 2022).

We find this case presents similarly to *Michigan v. Chesternut*, in which the Supreme Court held that a "brief acceleration to catch up with [an individual], followed by a short drive alongside him—[is] not so intimidating that [he] could reasonably have believed that he was not free to disregard the police presence." 486 U.S. 567, 576 (1988) (quotation omitted). Here, we discern no show of authority implicating the Fourth Amendment where Deputy Colona briefly accelerated, then drove behind Larremore for a short distance before following him to the shoulder of the highway.

Second, Larremore argues he was seized when Deputy Colona rested his forearm and hand on the truck's passenger-side door. We find no merit to that argument.

"A seizure requires the use of force with *intent to restrain*. Accidental force will not qualify." *Torres*, 592 U.S. at 317. "While a mere touch can be enough for a seizure, the amount of force remains pertinent in assessing the objective intent to restrain." *Vardeman v. City of Houston*, 55 F.4th 1045, 1051 (5th Cir. 2022) (quoting *id.*).

Deputy Colona's incidental contact with Larremore's truck does not evidence an objective intent to restrain. Dash camera and body camera

footage shows that Deputy Colona rested his left hand on Larremore's truck and right forearm on the truck's window frame to shake Larremore's hand. The touching lasted a mere twenty seconds and occurred while the two exchanged pleasantries in a casual tone. Deputy Colona stood at the passenger door side, but he did not physically block Larremore or his truck. "[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Bostick*, 501 U.S. at 434. The contact here was *de minimis*. The district court considered the video footage and hearing testimony before holding that Deputy Colona did not intend to restrain Larremore by physical force when he rested his hand on the truck. We find no clear error in this finding.

Third, Larremore contends Deputy Colona's "hang on a sec" statement was equivalent to an officer's oral command to not move. The district court found the statement was a pause in consensual conversation and not a seizure. Considering its context, we cannot say that this factual finding is clearly erroneous.

Oral directives from police may constitute a seizure when "the use of language or tone of voice indicat[es] that compliance with the officer's request might be compelled." *Vardeman*, 55 F.4th at 1051. But "police questioning, by itself, does not fall within the ambit of Fourth Amendment protections." *United States v. Chavez*, 281 F.3d 479, 483 (5th Cir. 2002) (citing *INS v. Delgado*, 466 U.S. 210, 216 (1984)). Conversations with police can be consensual. *See, e.g.*, *Cooper*, 43 F.3d at 145. We look to the following non-exclusive factors to determine a non-consensual encounter: (1) the threatening presence of several police officers; (2) the display of a weapon by an officer; (3) physical touching of the person of the citizen; and (4) the use of language or tone of voice indicating that compliance with an officer's request was compelled. *Mendenhall*, 446 U.S. at 554. We must consider not

only these factors, but ultimately the totality of the circumstances. *Flowers*, 6 F.4th at 655.

The *Mendenhall* factors do not support a seizure in this case. Deputy Colona was the only officer present, and he never touched Larremore. As to the display of a weapon, it is true Deputy Colona was in uniform with a holstered firearm. But the Supreme Court has held that this fact had "little weight in the [seizure] analysis." *United States v. Drayton*, 536 U.S. 194, 204–205 (2002). "[A]bsent active brandishing," a mere holstered firearm is "unlikely" to indicate a coercive encounter. *Id.* at 205. Deputy Colona did not brandish or otherwise reference his weapon. This factor, too, weighs against finding a seizure.

We now consider the language and meaning of the "hang on a sec" statement. The statement was made in a casual tone and was bookended by consensual conversation. It was not repeated. Deputy Colona's questions were innocuous and friendly. He asked how Larremore was doing, whether he was working, where he was heading, etc. The Supreme Court has held that the lack of "an authoritative tone of voice" with "no application of force, no intimidating movement, no overwhelming show of force, no brandishing of weapons, no blocking of exits, no threat, [and] no command" give "ample grounds" for a district court to conclude that a police interaction was consensual. *Drayton*, 536 U.S. at 204. Such is the case here. Deputy Colona's tone is anything but authoritative; he paused the conversation only to radio his location to headquarters for his safety. He exhibited no show of force.

Next, the meaning of "hang on a sec" does not plainly order someone to a location. Officer statements are not made in a vacuum. Indeed, Larremore himself did not interpret these words as an order to stay put. He immediately exited his truck and met Deputy Colona on the side of the road. Deputy Colona did not object to Larremore's actions, nor did he repeat his

No. 24-50431

statement. If Deputy Colona had issued an order, he certainly could have repeated it considering Larremore's non-compliance. Therefore, context before and after the statement suggests a consensual conversation.

When this court has recognized that an officer's verbal order among other actions is a seizure, the orders are express in their terms and are often repeated. For example, in *Wright*, the officer turned on her emergency lights when pulling up to a parked car and ordered the driver three times to "stay in [his] car." 57 F.4th at 528, 532. No other meaning can plausibly be derived from those statements. This instantaneous and express order coupled with the emergency lights meant a reasonable person would not feel free to leave. *Id.* at 532. Likewise in *Morris*, the officer unambiguously ordered the driver to exit his car and then repeated express demands to search the vehicle. 40 F.4th at 326, 328. "Both the express terms of the deputy's demand" and its "repet[ition]" suggested that compliance was required. *Id.* at 328. (citing *Mendenhall*, 446 U.S. at 555). In these cases, we noted that "it is hard to conclude that a person ordered to a certain location by police would feel free to leave." *Morris*, 40 F.4th at 328; *Wright*, 57 F.4th at 532.

Deputy Colona's statement is not express, immediately announced, or repeated. He did not ask any questions pertinent to a specific investigation before making the statement. The questions were permissible and do not establish a seizure absent a separate nonconsensual restraint. *See United States v. Brigham*, 382 F.3d 500, 508 (5th Cir. 2004).

Our review is guided by the clearly erroneous standard. Only if we are left with "a definite and firm conviction that a mistake has been committed" can we upset the district court's factual finding. *United States v. Alkheqani*, 78 F.4th 707, 723 (5th Cir. 2023) (quotation omitted). The deference given to the district court is even stronger here because it based its factual findings, in part, on Deputy Colona's suppression hearing testimony. *See, e.g., Gibbs*,

421 F.3d at 357. Deputy Colona testified that he meant the statement to be a pause in conversation, and the district court found Colona's testimony credible.

We should not second-guess witness credibility "because the [district] judge had the opportunity to observe the demeanor of the witnesses." *United States v. Robinson*, 741 F.3d 588, 594 (5th Cir. 2014) (quotation omitted). Indeed, we must affirm if there is a reasonable view of the evidence that supports the district court's conclusion. *Michalik*, 5 F.4th at 588. A pause in consensual conversation rather than a seizure is certainly a reasonable view of the evidence. We accordingly find no clear error.

The district court held Colona seized Larremore when he stated that he "need[ed] to look inside the trailer." We find Larremore was seized a minute earlier: when Deputy Colona relayed his suspicions of smuggling and stated that he "want[ed] to look inside" the trailer. A reasonable person would not feel free to leave under those circumstances. *See United States v. Hanson*, 801 F.2d 757, 761 (5th Cir. 1986) ("[W]hen [the officer] . . .informed [the defendant] that he. . .[was] suspected of carrying drugs, a reasonable person would not have believed that he was free to go."). Larremore's consensual interaction then transformed into a *Terry* stop where reasonable suspicion is required. *See, e.g.*, *United States v. Williams*, 365 F.3d 399, 405 (5th Cir. 2004). We now address the lawfulness of this *Terry* stop.

## B.

Larremore argues Deputy Colona never had reasonable suspicion and impermissibly extended Larremore's detention. We disagree and conclude Deputy Colona executed a permissible *Terry* stop.

A *Terry* stop is a seizure that requires reasonable suspicion. *Wright*, 57 F.4th at 529; *see also Terry v. Ohio*, 392 U.S. 1 (1968). The stop must be "(1) justified at its inception; and (2) reasonably related in scope to the

circumstances which justified the interference in the first place." *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005) (quotation omitted). Larremore challenges the encounter on both prongs. Our review is *de novo*. *Alvarez*, 40 F.4th at 344.

First, we find Deputy Colona had reasonable suspicion to initiate a *Terry* stop. Reasonable suspicion means an officer has "specific and articulable facts" supporting a reasonable belief "that a particular person has committed, is committing, or is about to commit a crime." *United States v. Monsivais*, 848 F.3d 353, 357 (5th Cir. 2017) (citation omitted). The proof needed is "considerably less than. . .a preponderance of the evidence." *Kansas v. Glover*, 589 U.S. 376, 380 (2020).

The reasonable suspicion analysis is intensely fact specific. *Flowers*, 6 F.4th at 656. We look to the entire encounter because "factors which by themselves may appear innocent, may in the aggregate rise to the level of reasonable suspicion." *United States v. Ibarra-Sanchez*, 199 F.3d 753, 759 (5th Cir. 1999). Officers develop reasonable suspicion through commonsense judgments and inferences about human behavior. *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000). Accordingly, they can consider a suspect's behavior and may make conclusions based on their experience in law enforcement. *Alvarez*, 40 F.4th at 346.

Deputy Colona first began to develop suspicion from the location and timing of where Larremore was driving. While mere presence in a certain location is generally not enough to support reasonable suspicion, the "relevant characteristics of a location can contribute to a finding of reasonable suspicion, and the timing of one's movements [is] a permissible consideration in [the] reasonable suspicion analysis." *United States v. Roper*, 63 F.4th 473, 478 (5th Cir. 2023) (quotation omitted).

Larremore was travelling on Highway 385 near the border patrol checkpoint when the scheduled patrol shift change would occur. Both the route and the timing can contribute to a finding of reasonable suspicion. This Court has recognized that Highway 385 is "known to be a route preferred by drug smugglers," and its checkpoint is one of the few not continuously monitored by border patrol. *United States v. Neufeld-Neufeld*, 338 F.3d 374, 380 (5th Cir. 2003); *United States v. Rodriguez–Rivas*, 151 F.3d 377, 378–79 (5th Cir. 1998) (suggesting that the Highway 385 checkpoint is not continuously manned). Deputy Colona testified that, based on his experience, smugglers often time their runs during the shift changes.

Larremore's responses to Deputy Colona's initial questions provided more information. Inconsistent and nonsensical answers can create reasonable suspicion. *Roper*, 63 F.4th at 479. The "most likely single alternative explanation" for inconsistent, nervous, or nonsensical stories or behavior, "particularly when the stop occurs on a highway that is frequently used by smugglers," is "that the occupants are carrying contraband." *United States v. Pack*, 612 F.3d 341, 362 (5th Cir. 2010), *opinion modified on denial of reh'g*, 622 F.3d 383 (5th Cir. 2010). It is reasonable for an officer to investigate that possibility. *Id.*

When questioned about the trailer, Larremore gave patently inconsistent and suspicious answers. He claimed he was selling the horse trailer with a locked compartment containing saddles to which he did not have a key. Despite emphatically stating that his girlfriend had locked the compartment, he struggled to remember her name. Larremore also admitted he was heading northbound from Terlingua, a border town, after delivering a horse. A trip commencing from a border town is relevant to reasonable suspicion because Mexico is "a common origin of illicit drugs." *United States v. Estrada*, 459 F.3d 627, 632 (5th Cir. 2006). Considering the totality of the circumstances, Deputy Colona had reasonable suspicion to justify a *Terry*

stop when he told Larremore that he suspected him of smuggling and wanted to see inside the trailer.

Next, we find the *Terry* stop was justified in its scope. Deputy Colona's questioning was permissible, and he did not unreasonably extend the encounter.

"There is no hard-and-fast time limit for reasonable traffic stops. Rather, the stop must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *United States v. Smith*, 952 F.3d 642, 647 (5th Cir. 2020) (quotation omitted). Questioning on a subject unrelated to the purpose of the stop is itself not a Fourth Amendment violation. *United States v. Shabazz*, 993 F.2d 431, 436 (5th Cir. 1993). "An officer may [] ask about the purpose and itinerary of a driver's trip." *Brigham*, 382 F.3d at 508. He may continue his questioning if his suspicion is increased by the detainee's conduct. *Id.*

The *Terry* stop was reasonable in scope given Larremore's continued nervous, evasive, and suspicious behavior. For example, he repeatedly claimed that something "embarrassing" to him was inside the trailer without providing any explanation. Deputy Colona was therefore entitled to broaden the length and scope of his questioning. *See, e.g.*, *Brigham*, 382 F.3d at 508.

Any delay in this encounter was caused by Larremore's hesitation and equivocations. Despite previously telling Deputy Colona to get his bolt cutters to search the trailer's locked compartment, Larremore changed course and asked what would happen if he did not agree to the search. The subsequent nine-minute conversation appears to have been a delay tactic by Larremore in an effort to conceal his criminal activity. Larremore extended the interaction with responses such as "thinking, thinking, thinking," and "big decision." An officer does not unreasonably extend a detention when he is not the cause of the delay. Only when it became clear Larremore was

No. 24-50431

stalling did Deputy Colona say he would search the truck because of the open alcohol container. Larremore then confessed to trafficking humans and immediately produced the key. His seizure was clearly supported by reasonable suspicion.

C.

Apart from the seizure issue, Larremore maintains Deputy Colona committed a trespassory search of his truck when he discovered the open alcohol container. We hold there was no Fourth Amendment violation surrounding Deputy Colona's plain view discovery.

Larremore argues the fruit of the poisonous tree doctrine requires the suppression of his confession and other evidence. He asserts Deputy Colona committed a common-law trespassory search under *United States v. Jones*, when he rested his hand on the window frame. 565 U.S. 400, 404–07 & n.3 (2012). Deputy Colona saw the open alcohol container while touching the truck, and Larremore contends this alone is a trespassory search. But for the discovery of the open alcohol container, Larremore maintains, Deputy Colona would not have later been able to say that he had probable cause to search Larremore's truck thereby triggering his confession. *Id.*

The district court believed Deputy Colona committed a trespassory search. However, it held there was no Fourth Amendment violation, because Larremore's initial consent to search the trailer was not withdrawn thereby attenuating any taint. We agree there was no constitutional violation but on different grounds. Deputy Colona's incidental contact with Larremore's truck does not constitute a trespassory search.

A common-law trespassory search under *Jones* occurs when there is a physical trespass "conjoined with an attempt to find something or obtain information." *United States v. Richmond*, 915 F.3d 352, 357 (5th Cir. 2019) (internal quotation marks omitted) (quoting *Jones*, 565 U.S. at 408 n.5). Our

precedents are sparse on what constitutes "an attempt to find something or obtain information." Other courts characterize this to mean an officer acts with an "investigatory purpose." *United States v. Poller*, 129 F.4th 169, 181 n.9 (2d Cir. 2025) (citing *Richmond*, 915 F.3d at 358; *Taylor v. City of Saginaw*, 922 F.3d 328, 332–33 (6th Cir. 2019)).

This court has noted that "mere physical touching, such as when an officer leans on the door of a car while questioning its driver," is not a trespassory search because it is not "conjoined with an attempt to find something or obtain information." *Richmond*, 915 F.3d at 357 (quotation omitted).

Accordingly, we find Deputy Colona's incidental contact with the passenger-side door is not a trespassory search. The video footage shows Deputy Colona merely leaned on the truck while speaking with Larremore. The evidence fails to establish that Deputy Colona touched the truck to discover information. Deputy Colona's safety verification was totally divorced from detection, investigation, or acquisition of evidence, and his initial questioning was consensual. Although the district court considered this a search, our review is *de novo*, and we may affirm on any basis supported by the record. *United States v. Rodriguez*, 601 F.3d 402, 405 (5th Cir. 2010); *El-Mezain*, 664 F.3d at 540.

We conclude Deputy Colona had a right to be where he was at the moment he observed the open alcohol container in plain sight, and any physical contact with the truck was minor and incidental. Because the open alcohol container discovery was lawful, it had no effect on any evidence obtained thereafter. The evidence is not subject to suppression.

## IV.

For the reasons stated above, the judgment of the district court is AFFIRMED.

No. 24-50431

JENNIFER WALKER ELROD, *Chief Judge*, concurring in part and dissenting in part:

I concur in the majority opinion's holding that Deputy Colona did not commit a trespassory search of Larremore's truck. But I respectfully disagree that Larremore was not seized under the Fourth Amendment.

While driving his pickup truck and trailer on a desolate two-lane highway in West Texas, James Larremore passed Deputy Colona's patrol car sitting on the side of the road. All agree that Deputy Colona lacked reasonable suspicion to pull over Larremore at that moment, including Deputy Colona. Nevertheless, Deputy Colona chased Larremore's truck at speeds of upwards of 94 miles an hour and tailed him closely for more than a minute, and then, after Larremore pulled to the side of the road, questioned him repeatedly about his route and the contents of his trailer. Thirty seconds into the interaction, Deputy Colona directed Larremore not to leave, saying "hang on one sec for me."

In my view, Deputy Colona seized Larremore as soon as he directed him to "hang on." In fact, Deputy Colona thought so too—at the suppression hearing, he admitted that a person in Larremore's position would not have felt free to leave.

Accordingly, Deputy Colona's unlawful seizure of Larremore gives rise to the fruit of the poisonous tree doctrine. And Larremore's confession and any other evidence obtained after Deputy Colona's unconstitutional seizure should have been suppressed. With great respect for my colleagues, I dissent.

I

As the majority opinion correctly observes, a seizure can be established in the absence of physical force through an officer's objective

18

intent to restrain a person by a show of authority, after which the person submits to the show of authority. *Ante* at 6–7 (citing *United States v. Wright*, 57 F.4th 524, 530–31 (5th Cir. 2023)). In this context, we must look at whether, in light of "all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Wright*, 57 F.4th at 531 (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). Critically, reasonable suspicion must exist prior to the seizure. *See United States v. Monsivais*, 848 F.3d 353, 357, 359 (5th Cir. 2017). But where the interaction is "not so intimidating that [a person] could reasonably have believed that he was not free to disregard the police presence and go about his business," no seizure occurs. *Michigan v. Chesternut*, 486 U.S. 567, 576 (1988) (internal quotation marks omitted).

Moreover, even under the taxing clear error standard, "video recordings are given a presumption of reliability and significant evidentiary weight[.]" *Wright*, 57 F.4th at 530. "Accordingly, where testimony conflicts with video evidence, our court must view the 'facts in the light depicted by the videotape'." *Id.* (quoting *Scott v. Harris*, 550 U.S. 372, 380–81 (2007)); *see also United States v. Anderson*, No. 23-50110, 2024 WL 2829243, at *3 (5th Cir. June 4, 2024).

## II

In this case, the dashcam footage from Deputy Colona's patrol car shows that after Larremore's truck passed him on the side of the desolate two-lane highway: (1) Deputy Colona immediately made a U-turn and began pursuing Larremore, reaching speeds of up to 94 miles per hour; (2) after catching up to Larremore's truck, Deputy Colona followed behind him closely for more than one minute of drive time; (3) Larremore moved to the side of the road—seemingly to let Deputy Colona pass his truck—and Deputy Colona pulled over behind him and stopped within a few feet of the

back of the trailer; and (4) Deputy Colona exited his car within five seconds of stopping and immediately looked in the back of the trailer to ascertain its contents while approaching the passenger side window of Larremore's truck. After approaching Larremore, Deputy Colona leaned on his truck, peered his head inside and scanned its interior, and questioned Larremore about his route and the contents of his trailer. Within thirty seconds of stopping Larremore, Deputy Colona directed him to "hang on one sec for me."

Under the totality of the circumstances, Larremore was seized at that moment. As the Supreme Court has long instructed, a seizure is a "meaningful interference, *however brief*, with an individual's freedom of movement." *United States v. Jacobsen*, 466 U.S. 109, 113 n.5 (1984) (emphasis added). We have recognized that "the use of language . . . indicating that compliance with the officer's request might be compelled" could amount to a seizure. *Vardeman v. City of Houston*, 55 F.4th 1045, 1051 (5th Cir. 2022) (quoting *Mendenhall*, 446 U.S. at 554). Therefore, an objective person would only need to "perceive that at least briefly, there was no freedom to go." *Id.* at 1052 (citing *Torres v. Madrid*, 592 U.S. 306, 317–18 (2021)).

After viewing Deputy Colona's bodycam footage, his statement to "hang on one sec for me" might not have been in a traditionally authoritative tone, but it indicated to Larremore that he should not go anywhere until Deputy Colona allowed him to go. *See United States v. Morris*, 40 F.4th 323, 328 (5th Cir. 2022) ("Under the Fourth Amendment's 'free to leave' test, it is hard to conclude that a person ordered to a certain location by police would feel free to leave."). Deputy Colona may not have explicitly ordered Larremore *to a certain location*, but he did direct Larremore *not to leave a particular location*—no matter how friendly his tone. Under our precedent, that is enough. *See United States v. McKinney*, 980 F.3d 485, 491 (5th Cir. 2020) (concluding that a seizure occurred when police instructed woman

walking away from officers to return); *cf. Morris*, 40 F.4th at 328 ("The district court also erred in failing to consider whether the deputies effected a stop when they ordered Morris out of his car . . . ."). In fact, Deputy Colona testified that he did not believe that a reasonable person in Larremore's position would have felt free to leave after being told to "hang on one sec for me."[1]

Further, the context and facts surrounding Deputy Colona's command make it all the more apparent that Larremore was not free to leave. Although Deputy Colona never activated his lights or sirens, he chased Larremore until he pulled over to the side of the road in a manner resembling a traffic stop.[2] Then, before directing Larremore to "hang on," Deputy Colona can be seen on video leaning with his hands on Larremore's truck, while peering his head inside and scanning its interior. Importantly, Deputy Colona's body position at that time would have most certainly made it particularly dangerous for Larremore to leave. *See, e.g.*, *Barnes v. Felix*, 605 U.S. ----, 145 S. Ct. 1353, 1356 (2025); *United States v. Flowers*, 6 F.4th 651, 659–60 (5th Cir. 2021) (Elrod, J., concurring) (collecting cases holding that a defendant is seized when an officer physically impedes the defendant's ability

---

[1] While Deputy Colona admits that he did not think a reasonable person would have felt free to leave and that he had not built any reasonable suspicion by this point, his subjective belief is not dispositive. *See United States v. Mask*, 330 F.3d 330, 336–37 (5th Cir. 2003). The government does not dispute that it may be considered.

[2] Indeed, the district court acknowledged that a reasonable person in Larremore's position may have believed that he was subject to a traffic stop. *See* Order Denying Def. Mot. to Suppress 10, ECF No. 44, *United States v. Larremore*, No. 4:23-cr-00289 (W.D. Tex. Oct. 6, 2023) ("Perhaps a reasonable person—thinking an officer following so closely on a two-lane highway wished to pass—would feel they were being stopped when that officer followed them onto the shoulder and parked behind them."). Moreover, Deputy Colona testified that his actions would likely communicate to a reasonable person that the officer wanted to "engage [him]." Nevertheless, the district court denied the motion to suppress.

to leave).  And it is also during this portion of the interaction that Deputy Colona questioned Larremore about his route and the contents of the trailer.[3]

In addition, Deputy Colona testified that he told Larremore to "hang on" because he was "pausing" the conversation to go radio his location to dispatch.  But he never radioed his location.  Instead, Deputy Colona can be seen stopping halfway to his patrol car, knocking on Larremore's trailer with his knuckle, and turning around to ask Larremore whether he had a key for the trailer and whether there was anything in there that was not supposed to be.  Meaning that, less than a minute after parking behind Larremore, Deputy Colona revealed his true intent as to why he pulled over behind Larremore—to look in the trailer.  *See United States v. Macias*, 658 F.3d 509, 524 (5th Cir. 2011) (holding that defendant was seized when defendant had "not been told he was free to leave" and officer asked the defendant about "possible contraband in the truck before requesting consent" to search it).

The majority opinion also focuses on the fact that Larremore must have not interpreted "hang on one sec for me" as a command because he exited his truck, crossed over the trailer hitch, and met Deputy Colona on the side of the road to continue their conversation, *ante* at 10, but we have rejected similar arguments previously.  *See Wright*, 57 F.4th at 532–33 (holding that, although the defendant did not fully comply with the officer's commands to stay in the vehicle, he "objectively appeared to believe he was not free to leave, and he did not attempt to flee, nor terminate the encounter").  As in *Wright*, Larremore's decision to exit his truck after Deputy Colona commanded him to "hang on one sec for me" does not nullify

_____

[3] The types of questions posed by Deputy Colona are generally permitted during a valid traffic stop.  *See United States v. Brigham*, 382 F.3d 500, 508 (5th Cir. 2004) ("An officer may also ask about the purpose and itinerary of a driver's trip during the traffic stop.").

the fact that he never left and objectively appeared to understand that he was not free to leave, as he did not attempt to flee or terminate the encounter, and he continued to answer Deputy Colona's questions. *See id.*

When viewing all of the circumstances surrounding the interaction, it is clear that Deputy Colona's high-speed pursuit of Larremore, combined with his neighborly approach with subtle pressure from his body position and hand placement, his touching and leaning into Larremore's truck and trailer, and his immediate questioning Larremore's route and contents of the trailer, indicated to Larremore that he was not free to leave. *See id.* at 531.

\* \* \*

In sum, I would hold that Deputy Colona unreasonably seized Larremore without reasonable suspicion. Therefore, Larremore's confession and the discovery of other evidence are products of a Fourth Amendment violation and should have been suppressed.

Our "forefathers, after consulting the lessons of history, designed our Constitution to place obstacles in the way of a too permeating police surveillance, which they seemed to think was a greater danger to a free people than the escape of some criminals from punishment." *United States v. Di Re*, 332 U.S. 581, 595 (1948) (Jackson, J.). Here, no one disputes that Larremore's actions were illegal. But so too was his seizure, and the Fourth Amendment therefore requires suppression.

Accordingly, I respectfully dissent in part.